**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2011-CT-00306-SCT**

*ROSEMARY FINCH*

*v.*

*STEWART FINCH*

<u>**ON WRIT OF CERTIORARI**</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2011 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES L. ROBERTSON, JR. |
| | ALFRED J. LECHNER, JR. |
| ATTORNEY FOR APPELLEE: | S. CHRISTOPHER FARRIS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 01/16/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Rosemary Finch filed a complaint for separate maintenance, and her husband Stewart

Finch responded with a counterclaim for divorce.  In the course of their divorce proceedings,

Rosemary and Stewart were required by Mississippi Chancery Court Rule 8.05 to provide

a comprehensive financial statement listing their individual incomes and expenses and their

marital and nonmarital assets and liabilities.  Miss. Unif. Ch. Ct. R. 8.05.

¶2.     The divorce trial was conducted before the Honorable James H.C. Thomas.  At trial,

it was established that Rosemary had been primarily responsible for handling the parties'

financial obligations and paying the bills. Stewart worked away from home as a tugboat captain in New York while Rosemary worked as a stay-at-home mom. In the judgment of divorce, the chancellor awarded Rosemary periodic alimony in the amount of $4,000 for thirty-six months, followed by $3,700 for forty-eight months, and finally $3,400 to be paid indefinitely. Stewart also was required to pay $7,000 for Rosemary's attorneys' fees.

¶3. Four months later, Rosemary filed a contempt petition claiming that Stewart had failed to pay alimony and child support, failed to obtain life insurance, failed to make COBRA payments, and failed to disclose his present address and telephone number. Stewart filed an answer and counter-petition for contempt, alleging that Rosemary had failed to pay the balance on a vehicle and failed to provide him with personal property from their marital home pursuant to the divorce judgment. Stewart also asserted that Rosemary must submit to a medical examination before he could obtain the life insurance. Later, Stewart filed an amended counter-petition for contempt and modification alleging that Rosemary had fraudulently represented to the chancery court that she had continued to pay all of the marital debts, just as she had through the marriage, but in reality, she had failed to make payments on an American Express credit card that was in his name. Based on this, Stewart asked the chancellor for a reduction in alimony from $4,000 to $2,500 to offset the increased costs resulting from her failure to pay. He additionally requested that the court declare his minor child emancipated because the child had refused to communicate with Stewart and had legally removed "Stewart" as his middle name.

¶4. In August 2010, a hearing was conducted before a specially appointed second chancellor, the Honorable Billy Bridges, in which Stewart asserted that Rosemary had

2

incurred debts in his name of which he was unaware, and that those debts were not listed on Rosemary's 8.05 financial statement. Testimony of the parties also revealed that Rosemary had been late in making payments on her vehicle; thus Stewart had paid the remainder of the debt on the car to keep his credit from becoming further damaged and to convey title to Rosemary pursuant to the divorce judgment. Stewart explained his attempts to communicate with his son and his son's refusal to have a relationship with him. The child also provided testimony indicating his desire not to have a relationship with Stewart. At the close of the hearing, the chancellor requested both parties submit findings of facts and conclusions of law to further support their claims. However, a judgment was not entered by the chancellor prior to the expiration of his appointment.

¶5. Oral argument was held before the newly appointed third chancellor, the Honorable Deborah J. Gambrell, in January 2011, on a motion for enforcement of the prior judgment related to the August hearing and on a motion to strike. Based on the oral arguments presented, and on the record from the August hearing, the chancellor issued an opinion and judgment. The chancellor found that there had been a material change in circumstances since the original divorce decree had been entered. First, Stewart was ordered to convey title to the Camaro to his daughter, but the title could not be transferred until the debt was fully satisfied by his daughter. Stewart's daughter ceased making payments on the vehicle, therefore, Stewart paid the $9,211.95 debt in order to protect his credit and to convey title. Second, the unpaid American Express debt and the undisclosed debts resulted in Stewart borrowing $38,000 to satisfy those debts. Third, Stewart suffered a reduction in income from $8,190.47 per month to $5,691.75 per month. Fourth, Rosemary now receives $728.00 per

3

month in social security payments. Fifth, Sean Finch displayed animosity toward his father, graduated from high school, was able to work a part-time job, and enrolled at a local junior college.

¶6.     In the judgment, the chancellor *sua sponte* raised a Rule 60(b) motion finding Rosemary had committed a fraud upon the court. Miss. R. Civ. P. 60(b). Thus, no time limit existed to inhibit the court from modifying the divorce judgment.

¶7.     The chancellor retroactively reduced alimony from $4,000 to $2,000 per month based on Rosemary's failure adequately to disclose social security payments, additional debts, and a joint account with her mother, and Stewart having to pay for both Rosemary's and his daughter's vehicles in order to transfer title pursuant to the divorce judgment. In addition, Stewart was paying more than $800 per month to satisfy the additional marital debts. The chancellor retroactively reduced child support from $1,300 to $900 per month and further relieved Stewart of the obligation to pay any of his son's educational expenses.

¶8.     Rosemary appealed this judgment, and the Court of Appeals affirmed the chancery court. Rosemary then petitioned for writ of certiorari, which we granted, seeking review of the following issues:

I.      **Whether Rosemary was given proper notice that she committed fraud on the court.**

II.     **Whether the third chancery judge used the clear and convincing evidence standard when finding Rosemary committed fraud.**

III.    **Whether an appellate court should give deference to credibility findings made by a third chancery judge who neither saw nor heard the witnesses testify.**

4

**IV.** **Whether the third chancery judge's findings were unsupported by the evidence, contrary to law, and deprived Rosemary of a fair trial.**

¶9. Finding this case should be reversed and remanded for further factual findings regarding Stewart's income and for a recalculation of alimony and child support under issue IV, it is not necessary for us to discuss Issue III.

### STANDARD OF REVIEW

¶10. Factual findings made by the chancery court will not be disturbed if they are "supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 14 (Miss. 2007) (quoting *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)). It is well settled that "[c]hancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters. . . ." *Henderson v. Henderson*, 757 So. 2d 285, 289 (Miss. 2000) (citing *Hammett v. Woods*, 602 So. 2d 825, 827 (Miss. 1992)).

¶11. Additionally, when this Court reviews motions for relief pursuant to Rule 60(b), reversal is warranted only when an abuse of discretion is found, because these motions are to be addressed at the sound discretion of the trial court. *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984) (citing *Clarke v. Burkle*, 570 F. 2d 824, 830 (8th Cir. 1978)).

### ANALYSIS

¶12. Mississippi Rule of Civil Procedure 60(b) states in part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding . . . ." Miss. R. Civ. P. 60(b). The rule further provides that

"This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." *Id*.

¶13. This Court has not spoken to whether a judge may *sua sponte* raise a Rule 60(b) motion, but the United States Court of Appeals for the Fifth Circuit has held that "the motion requirement of Rule 60(b) can be satisfied on the district court's own motion." **Baum v. Blue Moon Ventures, LLC**, 513 F.3d 181, 190 (5th Cir. 2008); *see* **McDowell v. Celebrezze**, 310 F.2d 43, 44 (5th Cir. 1962) ("The court could initiate [a Rule 60(b)(1) motion] on its own motion"); **In re Jack Kline Co.**, 440 B.R. 712, 729 (S.D. Tex. 2010) ("The Fifth Circuit has consistently held that the motion requirements of Rule 60(b) may be satisfied by the Court's own motion"). The Fifth Circuit also has held that the court must provide to the parties adequate notice and an opportunity for a hearing on the matter. **Baum**, 513 F.3d at 189. We agree with the Fifth Circuit.

> **I.      Whether Rosemary was given proper notice that she committed fraud on the court.**

¶14. Rosemary argues that she was blind sided by the judgment because she did not receive fair notice that the chancellor would consider issues not listed in Stewart's counter-petitions, and as a result, she was unable to take discovery to defend against the allegations. However, the record reflects that, even though the alleged undisclosed debts were not brought forth in the initial petitions, they were brought forth during the August 2010 hearing, in Stewart's subsequent proposed findings of facts and conclusions of law, and during the January 2011

6

oral arguments. In addition, Rosemary's counsel made arguments during the January hearing as to why Rosemary's actions were not fraud on the court.

¶15. Stewart did, in fact, raise the additional debts during the August 2010 hearing by entering as exhibits a credit report and statements from the creditors showing the amounts owed. Stewart testified that he was completely unaware of the debts at the time the parties completed their 8.05 financial statements.

¶16. Further, Rosemary's claim that she was unaware that the newly appointed third chancellor would consider allegations outside what was stated in the petitions is without merit. The chancellor made the following statement after hearing the parties' oral arguments:

> You all have given me so much information prior to this oral argument this morning that I am astutely familiar with everything you are saying. I have read the entire file; I have gone to sleep reading transcripts at night, every iota of everything. I feel confident that I can go ahead and proceed, but I accorded you an oral argument. I want you all to be able to argue your motion, your proposed findings of fact. I am going to allow you all of the time you need, but I have read everything to the point that I think I know everybody's position as it relates to the August hearing, as well as the Motion to Enforce, but if you feel that I am not fully up to speed with everything, you can go as long as you want.

The chancellor went on to explain that, in order to understand the situation before her, she had read everything thoroughly because of the cumbersome task of trailing previous orders and transcripts, which were issued under two different chancellors who previously had presided over the matter. The chancellor's statements made clear that she considered the parties' positions related to the arguments and testimony presented during the August hearing, which included the allegation of fraud. Further, the dissent argues that the hearing before the chancellor made no mention of the allegations of fraud upon the court, however,

7

Rosemary's attorney made arguments as to why Rosemary's failed disclosures should not equate to a fraud upon the court. Rosemary's attorney's arguments, combined with the chancellor's statements, as referenced above, make clear that all allegations from the August 2010 hearing were being considered and all parties were aware of this fact.

¶17. Rosemary also argues that Stewart became aware of the additional debts months before he filed his amended counter-petition for contempt; thus he was responsible for raising that issue in his petition. The facts support that Stewart did raise in his petition the issue of *fraudulent misrepresentation* to the court regarding the payment of one credit card debt, and that Rosemary was given ample time to prepare for her defense and did present a defense to those claims in her findings of facts and conclusions of law and during oral argument five months after the August hearing. Accordingly, we find this issue to be without merit, and the chancellor did not abuse her discretion in addressing the fraud *sua sponte* pursuant to Rule 60(b). Miss. R. Civ. P. 60(b).

## II. Whether the third chancery judge used the clear and convincing evidence standard when finding Rosemary committed fraud.

¶18. In *Trim v. Trim*, this Court held that any party found to have deliberately filed a "substantially false" financial statement pursuant to Rule 8.05 will have committed a fraud on the court; thus no time constraints will limit the court's ability to remedy such fraud. *Trim v. Trim*, 33 So. 3d 471, 473 (Miss. 2010). Here, the chancellor found that Rosemary dealt with all of the finances and ". . . was acutely aware of the lingering undisclosed indebtedness that would plague Defendant due to her failure to disclose the same. . . ." The chancellor relied upon *Trim v. Trim* to conclude that Rosemary had committed a fraud upon

8

the court, therefore the divorce judgment was modifiable in order to correct the fraud. *Trim*, 33 So. 3d 471 (Miss. 2010).

¶19.    Rosemary asserted that the chancellor failed to apply the clear and convincing standard when determining that the facts supported a finding of fraud on the court. Further, Rosemary contended that this Court's ruling in *Trim* does not mean that every incorrect Rule 8.05 financial statement filed equated to a fraud upon the court, and regardless, no credible evidence existed to support that Rosemary intended to commit fraud.

¶20.    We find no merit to Rosemary's claim that the chancellor failed to apply the clear and convincing standard. Rosemary provided that the chancellor never specifically stated the standard of proof, which is correct, but the judgment clearly reflects the chancellor's application of the clear and convincing standard. Further, the record before us supports that evidence existed to support the chancellor's ruling. *Biglane*, 949 So. 2d at 14 (citing *Cummings*, 681 So. 2d at 100). The chancellor determined that it was clear that Rosemary knew of the existence of the additional debts, her access to additional bank accounts, and her entitlement to social security benefits, and that those disclosures prevented the court from equitably dividing the assets and liabilities of the marriage.

¶21.    Before the divorce trial, a temporary order was entered requiring Stewart to pay $4,500 per month to Rosemary for alimony and child support. The order stated that both parties could make credit card payments on the cards issued in their own name but that no further charges should be made to the cards. Rosemary stopped paying the American Express bill and all of the purported undisclosed debts at that time. Stewart admitted to being aware of the American Express debt but stated that such debt was paid through Regions

Bank. The divorce judgment stated that Rosemary's alimony took into consideration the payoff of the Wells Fargo and Regions debts by the plaintiff. Stewart stated that his interpretation of the judgment meant that Rosemary was to pay *all* of the debts through Regions, including the American Express credit card debt. The record shows that Rosemary had individual debt through Regions, but other than Stewart's testimony, no verification can be found that the American Express debt was through Regions as well.

¶22. However, nothing in the record undermines that Stewart was unaware of the remaining debts. Rosemary claimed to be unaware of an address to send the debt collection notices to, but stated she informed the credit companies to send the statements to his work address. However, the parties did communicate via email. Exhibits were submitted showing the following additional debts totaling $18,438.59: (1) Oreck $948, (2) Sam's Club $6,447.62, (3) Chase $6,331, (4) Best Buy $4,711.97. Stewart also submitted his own statement of expenses and debts which included all of the above debts as undisclosed with an additional Citi debt of $8,503. Stewart marked the Citi debt as recently discovered but submitted no supporting documentation.

¶23. It was never an issue whether Rosemary was aware of these debts. Rosemary's testimony supports that she knew of the debts and chose to list only some of the debts that were listed solely in Stewart's name. Although mere nondisclosures alone do not rise to the level of fraud on the court, Rosemary's actions rise to the level of fraud by encompassing more than just mere nondisclosures. The ruling in ***Trim*** clearly states that simply failing to disclose essential facts to the proceedings to the adverse party or the court does not rise to the level of fraud. ***Id*** at 477-78 (citing ***Kerwit Med. Prods., Inc. v. N & H Instruments, Inc.***,

616 F. 2d 833, 836 n. 8 (5th Cir. 1980)). There must be a finding that the disclosure was intentional. *Trim*, 33 So. 3d at 478. Additionally, Rule 8.05 states that a violation of the rule results in contempt of court if no just cause exists to support the violation. Miss. Unif. Ch. R. 8.05. The elements of intentional or fraudulent representation are as follows:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Trim*, 33 So. 3d at 478 (citing *McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 406 (Miss. 2007)).

¶24. Here, testimony by Rosemary states that she paid the bills since Stewart worked away from home. Both of the parties' 8.05 financial statements list Rosemary as the person who paid for the debts that are listed. Rosemary's financial statement listed debts that are in her name alone, in Stewart's name alone, and in both their names. Clearly, Rosemary chose to list only some of the debts that were solely in Stewart's name. Stewart's testimony supports that he was unaware of these debts, had moved from the marital home where the notices were being mailed, and was promptly approved for a loan to pay all of the debts when he became aware of their existence. As a result, Stewart was injured by the chancellor's inability to equitably divide the marital assets and liabilities during the divorce judgment and was forced to incur additional debt to pay for the newly discovered debt. For these reasons, the dissenting opinion is farfetched by concluding that no evidence exists to support a finding of fraud.

11

¶25.   It is important to note that the chancellor also concluded that it was clear that Rosemary had failed to disclose two additional bank accounts and her entitlement to receive social security benefits.  Rosemary argues that the chancellor disregarded her testimony that she was unaware of being named on her mother's account, that she neither withdrew from nor deposited into the account, and that she did not begin receiving social security until six months after the divorce trial.  However, nothing from the record indicates that the chancellor disregarded Rosemary's testimony when considering those issues, thus we will not disturb the chancellor's findings.

¶26.   Under the facts of this case, we find the chancellor's decision was based on clear and convincing evidence, and substantial credible evidence exists to support that Rosemary committed a fraud upon the court by not revealing to the court or Stewart the existence of the additional debt.  As a result, Stewart's monthly expenses have substantially increased.  Although the chancellor failed to list specifically the elements of intentional or fraudulent representation in her judgment, the chancellor, as the finder of fact, exercised her discretionary powers to consider the credibility of differing testimony and conflicting evidence, and ample evidence existed to support that the elements were met.  *Trim*, 33 so. 3d at 479.  Accordingly, there is no support for this issue.

> **III.   Whether the third chancery judge's findings were unsupported by the evidence, contrary to law, and deprived Rosemary of a fair trial.**
>
> **A.  Stewart's Income**

¶27.   Rosemary argues that the first chancellor entered the divorce judgment based on Stewart's income being $120,000, when his actual reported income was $150,000.  Further,

testimony before the second chancellor revealed that Stewart's income in 2010 was already significantly higher during the first six months of that year based on Stewart working longer hours.

¶28. The evidence of Stewart's income presented at the August 2010 hearing included Stewart's 2009 tax return, bank statements for the end of 2009 through the beginning of 2010, and direct deposit sheets for May, June, and July of 2010. The chancellor relied upon the decrease in monthly income reflected on the May, June, and July direct deposit sheets, but failed to consider the year to date income, which reflected an increase in payments during the earlier part of the year. Stewart did testify that his income was greater during the beginning of 2010 due to working more hours. A review of the record shows that Stewart's income fluctuates from year-to-year. Accordingly, this case requires reversal for a further factual determination regarding whether Stewart's income had declined so that the court can properly determine the appropriate amount of child support and alimony to be awarded.

### B. Child Support

¶29. The chancellor retroactively reduced Stewart's child support back to the month when Sean testified indicating his desire not to have a relationship with his father.

¶30. "In child support modification proceedings . . . the chancellor is accorded substantial discretion and is charged to consider all relevant facts and equities, to the end that a decree serving the best interests of the children may be fashioned. . . ." *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1016 (Miss. 2012) (quoting *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983)). Each time child support payments become payable, those payments vest in the

13

child.  *A.M.L.*, 98 So. 3d at 1017.  Further, "[a]ny order for support of minor children . . . shall not be subject to a downward retroactive modification."  Miss. Code Ann. § 43-19-34(4) (Rev. 2009).  If downward modification is warranted, reductions become effective on the date of the judgment ordering modification.  *A.M.L.*, 98 So. 3d at 1017 (citing *Cumberland v. Cumberland*, 564 So. 2d 839, 847 (Miss. 1990) (citations omitted)).

¶31.   Therefore, the chancellor erred in allowing a retroactive downward modification to Stewart's child-support obligation dating back to the August 2010 hearing.  Thus, Stewart was required to continue $1,300-per-month payments until the judgment ordering modification was entered in February of 2011.  *See Cumberland*, 564 So. 2d at 847; *Thurman v. Thurman*, 559 So. 2d 1014, 1016–1018 (Miss. 1990); *Brand v. Brand*, 482 So. 2d 236, 237 (Miss. 1986); *Hailey v. Holden*, 457 So. 2d 947, 951 (Miss. 1984); *Hambrick v. Prestwood*, 382 So. 2d 474, 476 (Miss. 1980).

¶32.   Rosemary also argued that Stewart ceased making child-support payments in August 2010; thus he should be required to pay interest on those months that he did not pay.  We agree.  This Court consistently has held that interest accrues on unpaid child-support payments at the time each payment becomes due.  *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1992) (citing *Brand*, 482 So. 2d at 238); *see also Rubisoff v. Rubisoff*, 242 Miss. 225, 235, 133 So. 2d 534, 537 (Miss. 1961).

¶33.   The chancellor determined that it was in Sean's best interest not to render him emancipated, thus requiring Stewart to continue paying child support, because of the clear adult influences seeking to encourage the demise of Stewart's and Sean's relationship.  Additionally, the $1,300-per-month child support was ordered pursuant to an agreement of

the parties in their consent to adjudicate, and cannot be modified without a finding of a material change in circumstances, which were not foreseeable prior to the time of the agreement. *Varner v. Varner*, 666 So. 2d 493, 497 (Miss. 1995); *Thurman*, 559 So. 2d at 1017; *Tingle v. Tingle*, 573 So. 2d 1389, 1391 (Miss. 1990). This Court has said that modification is not warranted based on the diminishing financial ability of the parent if his position has been worsened voluntarily. *Varner*, 666 So. 2d at 497 (citing *Parker v. Parker*, 645 So. 2d 1327, 1331 (Miss. 1994)).

¶34. Here, the chancellor seemingly based the continuance of child support on Sean's attendance in school and on a minimum GPA requirement, because Sean, now age 18, would be rendered emancipated without remaining in school. Miss. Code Ann. § 93-11-65(8)(b)(i).[1] The judgment further stated that child-support obligations also will terminate when any other elements are met, rendering Sean emancipated, and that Stewart was relieved of any obligations to pay college expenses. Rather than ruling Sean emancipated, the chancellor eliminated Stewart's requirements to pay college expenses based on the deterioration of the father-son relationship and Sean's desire not to have any relationship with Stewart, but required the continuance of child support.

¶35. This Court has provided that a parent's obligation to pay for his or her child's college education is not absolute, because the court must consider whether the extra financial obligation is warranted based on the child's "aptitude and qualifications for

---

[1] Mississippi Code Section 93-11-65(8)(b)(i) states: "Unless otherwise provided for in the underlying child support judgment, the court may determine that emancipation has occurred and no other support obligation exists when the child discontinues full-time enrollment in school having attained the age of eighteen (18) years. . . ."

15

college," and the child's attitude toward and relationship with the parent. ***Hambrick v. Prestwood***, 382 So. 2d 474, 477 (Miss. 1980); *see **Caldwell v. Caldwell***, 579 So. 2d 543, 548 (Miss. 1991)(a child may forfeit receiving support from a noncustodial parent when the child's actions are clear and extreme). Therefore, the chancellor did not err in finding that Stewart was no longer required to pay for Sean's college expenses.

¶36. However, the chancellor erred in requiring Sean to maintain a "C" average to continue receiving child support, because child-support modifications are to be considered in light of the best interest of the child, including a determination of the *parent's* ability to provide for those needs, not the *child's* ability to prove worthy of support. ***Wallace v. Wallace***, 965 So. 2d 737, 742 (Miss. Ct. App. 2007) (citing ***Tedford***, 437 So. 2d at 417; ***Caldwell***, 579 So. 2d at 548 (emphasis added)). Further, both parents are to be held responsible for the "care, custody, and maintenance of the child of the marriage." 4 Miss. Practice, Encyclopedia of Miss. Law § 28:17 (2001). For these reasons, this judgment is reversed and the case remanded for the chancellor to determine the appropriate amount of child support to be awarded until Sean is ruled emancipated.

### C. Alimony

¶37. Rosemary argues that the chancellor did not have the authority to reduce her alimony retroactively to the date of the August 2010 hearing. This Court has held that alimony may be reduced retroactively at the discretion of the chancellor to the date the petition to modify was filed. ***Shearer v. Shearer***, 540 So. 2d 9, 12 (Miss. 1989) (citing ***McHann v. McHann***, 383 So. 2d 823, 826 (Miss. 1980)); *see also **Austin v. Austin***, 981 So. 2d 1000, 1006-1007

(Miss. Ct. App. 2007). Accordingly, we find this issue to be without merit, because Stewart first requested that the court modify Rosemary's alimony in June 2010.

## CONCLUSION

¶38. This Court finds that the chancellor did not abuse her discretion by modifying the judgment of divorce *sua sponte* pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure. Further, substantial credible evidence existed to support that Rosemary committed a fraud upon the court by clear and convincing evidence; therefore, the chancellor did not err in determining the same. However, this judgment is reversed and the case remanded to the Chancery Court of Lamar County, Mississippi, for further factual determinations concerning Stewart's income and the amounts that should be ordered for child support and alimony consistent with this opinion.

¶39. **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., KING AND COLEMAN, JJ.; CHANDLER, J., JOINS IN PART.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶40. The chancellor – after reading a transcript of a hearing that took place before a previous chancellor, and that had ***nothing*** to do with fraud – decided that Rosemary Finch previously had committed a fraud upon the court by failing to report on her Rule 8.05 financial disclosure form that her husband, Stewart Finch, had some credit card debt. Never mind that Stewart also failed to disclose it. In my judgment, the chancellor's finding of

17

fraud and the order of sanctions were erroneous. Accordingly, I concur in part and dissent in part with the plurality opinion.

***Violation of due process and simple fairness***

¶41. First, this issue came out of left field. No party ever filed a motion asking the chancellor to find that Rosemary had committed fraud on the court. No party ever argued that Rosemary had committed a fraud upon the court. And the chancellor gave no notice – ever – that she would, for the first time, take the issue up in her final order. *Never* has any chancellor – with no notice to the parties and no opportunity to submit evidence on the issue – been allowed by this Court to find that a party committed fraud upon the court, and to issue sanctions.

¶42. At the beginning of the last hearing held in this litigation, the chancellor – after stating the purpose of the hearing – stated that "*no additional claims or allegations are being made at this time.*" The parties agreed, specifying that the only matters to be taken up were Rosemary's Motion for Enforcement of a Judgment and Stewart's Motion to Strike. No one mentioned any issue related to Rule 60(b) relief for fraud upon the court.

¶43. The truth is, Stewart never filed any motion or other pleading alleging Rosemary had committed fraud upon the court; and prior to blindsiding Rosemary at oral argument, he never made any argument that Rosemary's failure to report *his* credit card debt on *her* Rule 8.05 financial statement amounted to fraud on the court. And, as stated above, the chancellor – *with agreement of all parties* – specifically limited the issues to be argued, and those issues did not include anything to do with fraud or the Rule 8.05 issue.

18

¶44. No witnesses testified at the oral argument, and Rosemary was never put on notice that the Rule 8.05 issue would even be considered. This comports neither with due process nor my view of simple fairness in the judicial process.

¶45. With respect, I cannot agree with the plurality's conclusion that Stewart's mere mention in his proposed findings of fact and conclusions of law (which, by the way, was not filed until *after* the evidentiary hearing, and which was completely unrelated to any claim of fraud upon the court) was sufficient to relieve him of the obligation to file a motion, or to relieve the chancellor of the obligation to provide notice and a hearing on the matter, before awarding sanctions. And I certainly cannot join the plurality's unreasonable expectation that Rosemary – with no notice whatsoever, and no opportunity to defend herself – simply should have assumed the chancellor would find she had committed fraud upon the court.

¶46. While I respect and appreciate our chancellors and the difficult work they are required to do, the day will not come when I will agree to affirm a finding of fraud against a party who was never put on notice of any fraud allegation and never given an opportunity to defend it. A chancellor's discretion does not, in my view, reach that far.

***No evidence to support fraud***

¶47. There is no such thing as accidental fraud, that is to say, for an act to be fraudulent, it must be intentional. The chancellor who found that Rosemary committed fraud for failing to disclose *Stewart's* credit card debt, has no evidence from the record to suggest why she did so. She took no evidence on the issue.

¶48.   Not every failure to disclose information on a Rule 8.05 disclosure statement results in fraud. This Court has recognized that "mere nondisclosures to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment under Rule 60(b)."[2]  Instead,

> relief based on "fraud upon the court" is reserved for only the most egregious misconduct, and requires a showing of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision."[3]

¶49.   Where is the evidence of a "plan or scheme"?  It is not in the record, nor will you find it discussed in the plurality opinion.  To the contrary, the record clearly discloses that, rather than attempting to gain an advantage by misleading the chancellor about financial matters, Rosemary chose not to pursue the chancellor's clearly erroneous finding that Stewart's income was $121,000, when it actually was $150,000.  Both the record and the majority opinion are void of any hint of evidence to support fraud.  And all of this is in the context of almost $300,000 in liabilities.

¶50.   One final point concerning the plurality's statement that "nothing in the record undermines that Stewart was unaware of the remaining debt."  This provides the only example I have seen where a finding of fraud has been predicated upon the accused's failure to submit evidence that he or she did not commit fraud.

¶51.   A finding that a party has committed fraud upon the court is not a trivial matter, and Rosemary should have been afforded notice of this serious claim against her, and an

---

[2] *Trim v. Trim*, 33 So. 3d 471, 477-78 (Miss. 2010) (quoting *Kerwit Med. Prods. v. N & H Instruments, Inc.*, 616 F.2d 833, 836 n.8 (5th Cir. 1978)).

[3] *Trim*, 33 So. 3d at 477-78 (quoting *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978))).

opportunity to defend against it. Because the chancery court failed to do so here, and

because the plurality fails to correct the error, I would also reverse both the chancellor's

finding that Rosemary committed a fraud upon the court, and the award of sanctions.

**WALLER, C.J., KING AND COLEMAN, JJ., JOIN THIS OPINION. CHANDLER, J., JOINS THIS OPINION IN PART.**