# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01666-COA

**GEORGE PATRICK MCNATT, JR. AND**                    **APPELLANTS**
**BARNEY EUGENE FINCH**

**v.**

**LESLIE TURBEVILLE F/K/A LESLIE**                    **APPELLEES**
**HOWELL, JOHN A. SULLIVAN, IN HIS**
**CAPACITY AS THE RANKIN COUNTY TAX**
**ASSESSOR, JUDY FORTENBERRY, IN HER**
**CAPACITY AS THE RANKIN COUNTY TAX**
**COLLECTOR, AND LARRY SWALES, IN HIS**
**CAPACITY AS CLERK OF THE RANKIN**
**COUNTY CHANCERY COURT**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/2013 |
| TRIAL JUDGE: | HON. DAN H. FAIRLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | J. EDWARD RAINER |
| ATTORNEYS FOR APPELLEES: | CRAIG LAWSON SLAY |
| | DAVID RINGER |
| | CHRISTOPHER PAUL PALMER |
| | BRENTON MATTHEW CARTER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | APPELLEE FOUND TO HAVE FEE-SIMPLE TITLE TO REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 04/28/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.     This case involves the validity of a tax deed that was acquired by a purchaser who was living on the former landowner's property. The Rankin County Chancery Court found that Leslie Turbeville had a fee-simple title to property that she bought at a tax sale, despite the

fact that Turbeville had begun living on the property as the tenant of the former landowner, George Patrick McNatt Jr. The chancellor found no merit to the claim of Barney Eugene Finch, who received a quitclaim deed from McNatt, that Turbeville was prohibited from acquiring title to the property because of her status as McNatt's tenant. Additionally, the chancellor held that the time that Turbeville had occupied the property after the tax sale defeated Finch's claim that deficient publication rendered the tax sale void. Finch appeals.[1] Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. McNatt owned a ten-acre parcel of land in Rankin County, Mississippi. In 1993, he began renting a lot to Turbeville for $100 a month.[2] Turbeville moved a mobile home onto the lot.

¶3. McNatt did not pay the 2001 ad valorem taxes on the property. In August 2002, Turbeville bought the property at the Rankin County Chancery Clerk's tax sale. Since then, Turbeville has consistently paid the ad valorem taxes on the property. McNatt did not redeem the property, and Turbeville received a tax deed in August 2004. She filed a homestead exemption on the property during 2005.

¶4. In June 2009, McNatt quitclaimed his interest in the property to his first cousin, Finch.

---

[1] Finch and McNatt are both listed as appellants. However, McNatt was dismissed as a party to the lawsuit, and he has not appealed that decision.

[2] There was no written lease agreement.

Finch did not pay McNatt anything in exchange.[3]  Finch[4] then sued Turbeville and sought to set aside the tax sale.  Finch claimed that the tax sale was void based on deficiencies regarding its publication and the description of the property.  Finch also claimed that McNatt did not receive proper notice of the tax sale.  The parties went to trial in January 2013.  Turbeville, McNatt, and Finch testified.

¶5.     Turbeville testified that she stopped paying McNatt rent in June 2002.  According to Turbeville, McNatt told her that she could replace a septic tank in lieu of paying rent.  Turbeville explained that McNatt's ex-wife told her about the tax sale.  After she purchased the property at the tax sale, Turbeville attempted to tell McNatt that she "had purchased the taxes."  Although she went to the house where McNatt had lived on the property "several times," there was never anyone there.  Turbeville testified that she has not seen McNatt living on the property since 2002.  Her mobile home was approximately two-hundred feet from the house.  She explained that she saw McNatt's former house on a daily basis, and no one had lived in it since McNatt left.  The house was always dark at night.  There were never any candles, kerosene lamps, or any other sources of light.  The house has been condemned.

¶6.     After she remarried, Turbeville moved off of the property. That was sometime during 2009.  Turbeville's sister moved into the mobile home.  Turbeville also rented a lot to Pam Bunn, who moved another mobile home onto the property.  Turbeville's husband cut the

---

[3]  Although the quitclaim deed states that Finch paid McNatt ten dollars "and other good and valuable considerations," McNatt testified that Finch did not pay him anything.

[4]  McNatt also sued Turbeville.  However, Turbeville successfully moved to dismiss McNatt as a plaintiff based on the fact that he had attempted to quitclaim the property to Finch.

grass on the property, and her stepson hunted on it.

¶7.    According to McNatt, he was living at a house on the property when the tax sale occurred in 2002. He claimed that he moved off of the property until 2011 or 2012. McNatt testified that he did not receive any notice regarding the 2002 tax sale. Regarding the process server's return and its indication that no one was living in the house, McNatt said the return was incorrect. McNatt acknowledged that the house last had electricity and running water in 2005, because he could not afford the utilities. However, McNatt maintained that he continued to live in the house. He explained that he "used car batteries and 12-volt lights," and he "got [his] water [from] other places." McNatt also testified that he was a member of a "health fitness center," and he took showers there.

¶8.    The chancellor found that Turbeville treated the property as though it was her own for more than three years after she bought it at the tax sale, so Finch was statutorily barred from claiming that deficiencies in the tax sale rendered it void. As for McNatt's quitclaim deed to Finch, the chancellor found that it was void. Consequently, the chancellor reasoned that Turbeville had a fee-simple title to the property, and Finch's quitclaim deed was "null and void." Other aspects of the chancellor's judgment will be discussed in the analysis below. Finch appeals.

**STANDARD OF REVIEW**

¶9.    Appellate courts employ a limited standard of review on appeals from a chancery court. *Miller v. Pannell*, 815 So. 2d 1117, 1119 (¶9) (Miss. 2002). We will not disturb the chancellor's factual findings if they were supported by substantial evidence. *Biglane v.*

4

*Under The Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007). However, we will reverse the chancellor if he abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Id*. We review questions of law de novo. *Id*.

**ANALYSIS**

¶10.    Finch claims that the chancellor erred when he held that the property was Turbeville's. According to Finch, Turbeville's tenant status prevents her from asserting a claim that was adverse to her landlord's property. Alternatively, Finch argues that the tax sale is void based on deficiencies regarding its publication. Finch also claims that McNatt did not receive proper notice of the expiration of the redemption period.

¶11.    In *Jordan v. Goodson*, 558 So. 2d 848, 851 (Miss. 1990), the Mississippi Supreme Court held that "a tenant cannot assert title adverse to his landlord." Finch reasons that since Turbeville was once McNatt's tenant, her claim to the property cannot defeat his, which vicariously derives through McNatt. According to Finch, Turbeville would have had to stop being McNatt's tenant before she could acquire the property. Finch argues that McNatt's failure to charge Turbeville rent after June 2002 does not amount to Turbeville's repudiation of her status as McNatt's tenant. Finch's interpretation is that McNatt simply allowed Turbeville to continue living on the property without paying rent directly to him. Finch reiterates McNatt's testimony that he allowed Turbeville to pay the ad valorem taxes or septic-tank expenses in lieu of rent.

¶12.    The principle that a tenant may not assert a claim adverse to a landlord's ownership of real property is not absolute. The supreme court has held:

> The estoppel of the tenant to deny the title of the landlord without surrendering possession of the leased premises has relation generally to its status at the time of the creation or inception of the tenancy, and does not preclude the tenant from acquiring during his tenancy the title which was held by the landlord at the beginning thereof.

*James v. Shaffer*, 202 Miss. 565, 568, 32 So. 2d 749, 750 (1947). Turbeville's claim did not arise when she began renting from McNatt in 1993. McNatt did not pay the ad valorem taxes on the property, so Turbeville purchased it at the 2002 tax sale. The United States Supreme Court has noted "that every person will naturally seek to enjoy that which belongs to him; and the inference fairly to be drawn from [one's] silence and neglect [is the] . . . intention to relinquish it." *New Jersey v. New York*, 523 U.S. 767, 786 (1998).

¶13.    As discussed above, there was ample evidence that McNatt had not lived on the property since 2002. The chancellor noted that it was "more likely than not that McNatt did not live upon the land for several years." The chancellor based his conclusion on the testimony that there was no electricity or running water at the house. Although McNatt had testified that he and Turbeville had agreed that she would pay the ad valorem taxes as part of her obligations as a tenant, the chancellor found that McNatt's testimony was not credible. "[A] chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility." *Legacy Hall of Fame Inc. v. Transp. Trailer Serv. Inc.*, 139 So. 3d 105, 109 (¶21) (Miss. Ct. App. 2014). The chancellor noted that McNatt would have been exchanging approximately $1,200 per year in rental income for approximately $300 in ad valorem taxes. Turbeville paid the ad valorem taxes on the property since she acquired it. McNatt did not redeem the property. The chancellor

6

did not err when he found that Turbeville had a fee-simple title to the property.

¶14.    As for Finch's claim that the publication of the tax sale was deficient, Mississippi

Code Annotated section 15-1-15 (Rev. 2012) provides:

> Actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes . . . .

The tax sale was in 2002.  Turbeville testified that she lived on the property until 2009.  Even

if we assume that there were defects in the publication of the notice of the tax sale, the

chancellor did not err when he found that those defects were cured by Turbeville's occupancy

of the property for approximately seven years after the tax sale.  Therefore, we find no merit

to Finch's claims on appeal.

¶15.    **THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**        LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.  JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**