## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00313-COA

**BRIDGET WARREN HOLMAN**                                           **APPELLANT**

**v.**

**DAVID SCOTT HOLMAN**                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2015 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEY FOR APPELLEE: | JOHN STANNARD FARESE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | FOUND APPELLEE'S FINANCIAL STATEMENT WAS NOT MATERIALLY FALSE; REFUSED TO CLASSIFY OR DIVIDE APPELLEE'S RETIREMENT ACCOUNT; AWARDED ATTORNEY'S FEES TO THE APPELLEE; AND FOUND THERE WAS NO CHILD-SUPPORT ARREARAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART: 04/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Bridget Warren Holman appeals the chancellor's findings regarding the distribution

of marital property, the award of attorney's fees, and child support.  Upon review, we affirm

in part, and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

¶2.    Bridget and David "Scott" Holman were married July 10, 2003.  They have two minor

children together, and Bridget has a minor child from a previous relationship.

¶3.     On January 15, 2013, Bridget filed for divorce on the grounds of adultery, habitual cruel and inhuman treatment, and/or irreconcilable differences. In March 2013, Scott counterclaimed for divorce on the grounds of habitual cruel and inhuman treatment and/or irreconcilable differences. Both Bridget and Scott sought custody of their minor children and an equitable distribution of the marital property. An agreed temporary order was entered in August 2013; Bridget received temporary custody of the minor children, and Scott paid $2,500 per month in child support.

¶4.     The case lingered because Bridget changed attorneys and there were various contempt and discovery issues. The trial initially began on June 16, 2015; Bridget was represented by her fourth attorney. Late that day, Bridget testified about an incident when Scott spanked one of the children. The chancellor construed Bridget's testimony as an allegation of abuse, appointed a guardian ad litem, and rescheduled the trial.

¶5.     The trial resumed on October 12, 2015. Before then, Bridget terminated her fourth attorney and proceeded to represent herself. At the conclusion of the trial, the chancellor dismissed Bridget's complaint for divorce on the ground of adultery, and awarded Scott a divorce on the ground of habitual cruel and inhuman treatment. The chancellor awarded custody of the minor children to Bridget, divided the marital property, and ordered Bridget to pay Scott's attorney's fees for the child-abuse allegation.

¶6.     After the trial, Bridget retained new counsel. Her counsel obtained Scott's payroll records. Then, Bridget filed a motion for reconsideration and/or a new trial. Scott filed a

2

similar motion. The motions were denied by the chancellor. From this judgment, Bridget now appeals.

## STANDARD OF REVIEW

¶7. In an appeal from chancery court, we apply a limited standard of review. *Scott v. Scott*, 115 So. 3d 847, 849 (¶6) (Miss. Ct. App. 2012). "We will not disturb the chancellor's factual findings if they [are] supported by substantial evidence." *McNatt v. Turbeville*, 162 So. 3d 881, 883 (¶9) (Miss. Ct. App. 2015). "However, we will reverse the chancellor if he abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id*. "We review questions of law de novo." *Id*.

## ANALYSIS

### I.     *Scott's Financial Statement*

¶8. Bridget claims Scott filed a materially false financial statement, which failed to disclose a retirement account and grossly misrepresented his monthly income. During the trial, Scott submitted two financial statements: dated January 2013 and October 2015, respectively. Neither of the financial statements listed a retirement account. Bridget claims that, based on the documents she obtained posttrial, Scott had a retirement account worth $53,701.14 and an average monthly income of $13,526.38. She now argues that Scott's failure to properly disclose his income and assets was a fraud on the chancery court.

¶9. "Uniform Chancery Court Rule 8.05 requires each party in a domestic-relations case involving economic issues and/or property division to file a financial statement with the court." *Bell v. Stevenson*, 158 So. 3d 1229, 1237 (¶22) (Miss. Ct. App. 2015). "[A] party's

3

intentional filing of a substantially false Rule 8.05 financial statement constitutes a fraud on the court." *Trim v. Trim*, 33 So. 3d 471, 478 (¶17) (Miss. 2010). "[M]ere nondisclosures alone do not rise to the level of fraud on the court." *Finch v. Finch*, 137 So. 3d 227, 235 (¶23) (Miss. 2014). Instead, "[r]elief based on 'fraud upon the court' is reserved for only the most egregious misconduct, and requires a showing of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" *Trim*, 33 So. 3d at 477 (¶15). "[F]raud must be prove[n] [by] clear and convincing evidence." *Finch,* 137 So. 3d at 235 (¶23).

¶10.    Here, the chancellor found there was "no evidence that [Scott] willfully withheld, secreted, or had any plan to perpetrate a fraud upon the court." We agree.

¶11.    Scott listed his gross monthly income as $6,333 on his first financial statement and $6,000 on his second. However, Scott noted that these amounts were averages since he received commissions and bonuses that varied.

¶12.    During the June 2015 trial, Scott was questioned by Bridget's former counsel regarding his income and admitted his income varied each month. During the October 2015 trial, Scott explained there were months where he would bring in a large amount of money, but there were also months where he did not have "much of anything coming in." Scott agreed that the income listed in his financial statement was "an average over a period of time looking at it and trying to come up with [it] the best [he] could."

¶13.    Additionally, during the June 2015 trial, Bridget's former counsel questioned Scott about his financial statement. When asked if there were any additional accounts other than

4

the ones listed in his financial statement, Scott acknowledged he had a retirement account through his employment, but did not know the balance. In the October 2015 trial, Scott again acknowledged the retirement account and stated that he did not draw dividends.

¶14.    The record indicates that Bridget was aware of both the variation in Scott's income and the retirement account. However, Bridget had four different attorneys throughout the litigation. She terminated her fourth attorney prior to the October 2015 trial, and proceeded to trial pro se. She hired her fifth attorney after the October trial. Interestingly, she now relies on payroll records obtained by her fifth attorney only days after the October trial.

¶15.    During the hearing on the motions for reconsideration, the chancellor declined to admit the documents and ultimately found as follows:

> With respect to the retirement account and in conjunction with the income argument, as the Court recalls, [Scott's] income is not a guaranteed amount. It is fluctuating and speculative. He represented it to be one figure. If his testimony were to be impeached, it should have been impeached at trial. There's no evidence that he willfully withheld, secreted, or had any plan to perpetrate a fraud upon the Court. His 8.05 reflected what he believed his income to be or what he represented his income to be, presumptively in good faith. It certainly could have been attacked and impeached by — clearly, easily discoverable evidence, which I think [Bridget's counsel] has shown that it is.

¶16.    There is no evidence Scott intentionally filed a substantially false financial statement. He acknowledged his variation in income as well as his retirement account during trial. Bridget was aware of Scott's employment and had the option of obtaining financial records to dispute Scott's income and retirement. Notably, the newly obtained financial documents were previously available to Bridget. Yet, because of her inability to retain and keep counsel for a consistent period of time and her self-representation at trial, Bridget failed to present

5

evidence to dispute Scott's testimony.

¶17. Bridget asserts Scott's failure to properly disclose his income resulted in child-support payments that are "too low." However, Bridget may seek a modification in child support and use the financial records she obtained posttrial. The chancellor found that Scott's disclosures did not amount to fraud. Also, the chancellor found no evidence of "egregious misconduct" or "an unconscionable plan or scheme which [was] designed to improperly influence the court in its decision." Thus, we do not find the chancellor erred in failing to find Scott intentionally submitted a materially false financial statement. We do not find the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. We affirm the chancellor's ruling on this issue.

## II. Scott's Retirement Account

¶18. The record shows Scott has a retirement account through his employment, which was accumulated during the marriage. Although its value was unknown, the account was discussed at trial. However, the chancellor failed to classify or address the retirement account.

¶19. "[A] failure to classify property does not automatically result in reversible error if the division of property is fair." *Dykes v. Dykes*, 191 So. 3d 1287, 1291 (¶26) (Miss. Ct. App. 2016). However, a "failure to classify a material asset is grounds for reversal on appeal." *Strong v. Strong*, 981 So. 2d 1052, 1055 (¶18) (Miss. Ct. App. 2008).

¶20. We find the retirement account is a material asset that should have been classified and addressed. We find it was reversible error for the chancellor to not classify and consider

6

Scott's retirement account in the equitable division of marital property. We therefore reverse and remand for a classification and division, if appropriate, of Scott's retirement account.

### III.   Attorney's Fees

¶21.   At the end of the initial trial in June 2015, Bridget testified regarding an incident of excessive spanking of one of the parties' minor children. Bridget stated, "I mean it wasn't just a spanking on the butt. We're talking about up and down the back, red marks, and had I been smart enough, I would have taken a picture of that."

¶22.   The chancellor construed Bridget's testimony as an allegation of child abuse, appointed a guardian ad litem, and continued the trial. The guardian ad litem ultimately found the allegations of child abuse to be without foundation. As a result, the chancellor ordered Bridget to pay Scott's attorney's fees related to the child-abuse allegation.

### a.   Abuse Allegation

¶23.   Bridget claims she did not make an abuse allegation "but merely talked about Scott's bad parenting" and "an incident of excessive spanking." Pursuant to Mississippi Code Annotated section 43-21-105(m) (Rev. 2016), "physical discipline, including spanking, performed on a child by a parent, guardian or custodian in a reasonable manner shall not be deemed abuse under this section."

¶24.   Bridget asks that we find the chancellor erred in construing Bridget's allegation of excessive spanking and her testimony that Scott spanked the child up and down his back, leaving red marks, as an allegation of child abuse. We disagree. Based on Bridget's testimony, it was not manifestly wrong or clearly erroneous for the chancellor to have

7

concerns since, under Mississippi Code Annotated section 43-21-105(m) (Rev. 2015), spanking must be reasonable.

¶25. Moreover, neither Bridget nor her former trial counsel objected to the chancellor's interpretation of Bridget's testimony, or attempted to clarify Bridget's statements. Bridget had the opportunity to advise the chancellor at that time what she now asserts to this Court on appeal—that she did not intend to allege child abuse, but was simply discussing Scott's bad parenting.

### b. Amount of Attorney's Fees Awarded

¶26. Bridget next argues "the chancellor had no legal authority to award attorney's fees." Bridget further argues that even if it was proper for the chancellor to award Scott attorney's fees, the attorney's fees should have been limited to those fees actually incurred in defending the abuse allegation.

¶27. "An award of attorney's fees will not be disturbed unless the chancellor abused his discretion or committed manifest error." *Stuart v. Stuart*, 956 So. 2d 295, 299 (¶20) (Miss. Ct. App. 2006). Attorney's fees may be properly awarded "where one party's actions have caused the opposing party to incur additional legal fees." *Id*.

¶28. The chancellor ordered Scott's counsel to present an accounting of attorney's fees incurred in the defense of the abuse allegation. However, Scott's counsel submitted an affidavit and an attached itemization, which included charges for all work performed since June 2015, when the allegation of abuse was made by Bridget.

¶29. The chancellor awarded Scott $15,135 in attorney's fees, which represented all work

8

performed by Scott's counsel since the child-abuse allegation was made. The chancellor explained his decision as follows:

> This matter was tried almost to its conclusion as [Scott's counsel] correctly stated, in day one, and then a revelation by [Bridget] comes about alleging abuse by [Scott]. The [chancery court], pursuant to the appropriate statute, halted the proceedings and appointed a guardian ad litem. In doing so, that not only increased the attorney['s] fees for both parties, but also, of course, incurred the fees of the guardian ad litem.

> We tried the matter then on yet another day, again to its conclusion . . . . I think in all fairness and in all equity, because of the additional attorney['s] fees incurred because of the revelation from the stand and not anywhere prior . . . in any deposition, discovery, or otherwise, it's only proper that the party who causes another party to incur those fees should be assessed.

¶30. As the chancellor noted, at no point prior to the June 2015 trial had Bridget alleged child abuse. Indeed, the abuse allegation was made for the first time after approximately two and one-half years of litigation. Such an allegation caused additional delay and costs. Thus, we do not find the chancellor abused his discretion or committed manifest error in awarding attorney's fees.

¶31. However, we do find the chancellor erred in failing to determine what portion of the submitted fees was actually incurred by Scott in responding to the abuse allegation. "The fees 'should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary.'" *Martin v. Stevenson*, 139 So. 3d 740, 752 (¶40) (Miss. Ct. App. 2014) (citing *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992)). Accordingly, we reverse and remand in order for the chancellor to determine the amount of attorney's fees associated with Scott's defense of the abuse allegation.

*IV.    $7,500 Child-Support Arrearage*

¶32.    In the final decree, the chancellor found Scott owed $14,103.67 in unpaid child support.  Bridget claims the amount owed is $21,603.67, and argues "there [is] $7,500 in arrearages on child support that was not addressed" by the chancellor in his final decree.

¶33.    Bridget asserts Scott failed to pay child support in the amount of $2,500 per month "for the three (3) months of child support due from the time of the first trial [in June 2015] to the second trial [in October 2015]."  However, we do not find the record supports Bridget's claim of a $7,500 arrearage.

¶34.    During the initial trial in June 2015, Bridget testified that Scott owed $14,103.67 in child support from November 2014 to June 2015.  During the October 2015 trial, Bridget stated the amount to date was $21,603.67 for "medical bills and so forth."  Thus, it is unclear whether the additional $7,500 alleged by Bridget is in fact an "arrearage on child support" or includes additional expenses such as medical bills.

¶35.    Additionally, the testimony shows that in October 2014, Bridget stopped paying the mortgage and the land note.[1]  As a result, Scott subtracted the amount of the mortgage and the land note from his monthly child-support payments.[2]  During the October 2015 trial, Scott testified that he continued to pay child support at the "subtracted" rate until "June [2015] or

---

[1] The temporary order entered August 2013 does not address who was responsible for payment of the mortgage or the land note.

[2] The amount of child support Scott was required to pay pursuant to the temporary order was never reduced or modified by the chancellor.  According to Scott, he was unable to pay all of the expenses after Bridget stopped paying the mortgage and the land note and, as a result, he unilaterally subtracted the amount of the mortgage and the land note from his monthly child support payments in order to avoid foreclosure.

so," and then began to pay the $2,500 again, plus the other expenses. Bridget had the opportunity to cross-examine Scott following his testimony. However, Bridget did not ask a single question regarding child support, nor did she present any evidence to dispute Scott's testimony regarding child-support payments following the June 2015 trial.

¶36. Moreover, despite numerous motions for contempt filed by Bridget throughout litigation, there is no record that Bridget filed a motion for contempt for Scott's failure to pay child support "for the three (3) months of child support due from the time of the first trial [in June 2015] to the second trial [in October 2015]."

¶37. There is nothing in the record to show that Scott failed to pay child support for three months following the June 2015 trial. Thus, we find the chancellor did not err in failing to account for a $7,500 arrearage, as Bridget failed to show such an arrearage exists.

¶38. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ, CONCUR.**

11