# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01748-COA

ROBERT NEIL ANDERSON                                              APPELLANT

v.

CHRISTINA L. ANDERSON                                              APPELLEE

DATE OF JUDGMENT:                09/12/2013
TRIAL JUDGE:                     HON. JERRY G. MASON
COURT FROM WHICH APPEALED:       LAUDERDALE COUNTY CHANCERY
                                 COURT
ATTORNEYS FOR APPELLANT:         PAUL HARDIN HOLMES
                                 MARCUS ALAN MCLELLAND
ATTORNEYS FOR APPELLEE:          ROBERT D. JONES
                                 ELIZABETH RHAE RANDALL DARSEY
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:         GRANTED DIVORCE, DIVIDED MARITAL
                                 PROPERTY, AWARDED ALIMONY TO
                                 APPELLEE, AND AWARDED CUSTODY
                                 AND CHILD SUPPORT TO APPELLEE
DISPOSITION:                     AFFIRMED: 09/08/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

BEFORE IRVING, P.J., BARNES AND FAIR, JJ.

FAIR, J., FOR THE COURT:

¶1.     Christina and Neil Anderson divorced on May 23, 2012. After a trial, the chancellor entered a judgment on the issues of equitable division of marital property, debt, and alimony. Child support, initially agreed on, had become an issue for Neil, who has appealed, asserting that: (1) the chancellor erred in his equitable division of marital assets and allocation of marital debts; (2) the chancellor erred in ordering Neil to pay Christina $400 a month in

permanent alimony; and (3) the chancellor erred in ordering Neil to pay $1,219.27 a month in child support. We find the chancellor acted within his discretion and therefore affirm.

**FACTS**

¶2. Christina and Neil married on December 11, 1992. During their marriage, they had three children, who were all teenagers at the time of trial. Christina filed for divorce on May 9, 2011. On June 2, 2011, the court entered a "temporary settlement announcement and order" (temporary order) based on the parties' negotiations. Neil was not represented by counsel. The parties agreed that Christina would have physical and legal custody of the minor children. The order also set out a visitation schedule. Neil agreed to pay Christina $1,400 per month in child support and $900 in alimony. Neil subsequently filed a motion to modify the temporary order, claiming inability to pay.

¶3. On May 23, 2012, both parties consented to divorce on the ground of irreconcilable differences. As part of the agreement, Christina received exclusive physical and legal custody of the minor children, subject to Neil's visitation, on which they agreed. Neil also agreed to pay Christina $1,219.27 a month in child support. The agreement further stated that any "contested issues" would be adjudicated in Lauderdale County Chancery Court. Those issues included the equitable division of marital assets and allocation of marital debt, alimony, and any noncompliance with the temporary order.

¶4. On December 20, 2012, Christina filed a second contempt motion for Neil's failure

to pay child support and alimony.[1] The court had found Neil to be in civil contempt and allowed him the opportunity to purge himself of contempt by paying the monthly child support arrearages and alimony arrearages, plus interest. Instead, he filed a second motion to modify the temporary order, again asserting his inability to pay.

¶5. The court held a trial on July 15 and 16, 2013. Both parties testified and submitted ample evidence, including Rule 8.05[2] financial statements, credit card statements, tax returns, savings plan documents, and retirement documents. Neil's 8.05 showed a gross monthly income of $6,720, and Christina's 8.05 showed a gross monthly income of $1,144.11. After applying and discussing each of the *Ferguson*[3] factors in some detail, the court found the following marital property subject to equitable distribution: (1) a check payable to Neil and Christina from a Stifel-Nicolaus investment account; (2) the jointly owned former marital home; (3) specified personal property; (4) three vehicles; (5) Neil's Federal Employees Retirement System (FERS) account from March 2000 to June 2, 2011; (6) Neil's FERS Thrift Savings Plan (TSP) account from March 2000 to June 2, 2011; (7) Neil's military retirement from December 1992 to June 2, 2011; and (8) Neil's Ready Reserve TSP account from December 1992 to June 2, 2011.

---

[1] Christina filed her first motion to cite for contempt on December 8, 2011. The parties resolved the issue through the consent agreement.

[2] UCCR 8.05.

[3] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

¶6.     The chancellor next turned to an analysis of the *Armstrong*[4] factors to determine whether he should award Christina alimony. Considering the *Armstrong* factors under the totality of the circumstances, the chancellor found that a need for alimony existed, and ordered Neil to pay Christina $400 a month in permanent alimony. He further ordered that, for the three minor children, Neil pay monthly child support in the amount agreed upon in the consent to divorce ($1,219.27). Additional relevant facts will be discussed in the analysis.

## STANDARD OF REVIEW

¶7.     "When [an appellate court] reviews a chancellor's decision in a case involving divorce and all related issues, [the court's] scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007). Therefore, this Court will not disturb the chancellor's findings "unless the chancellor was manifestly wrong [or] clearly erroneous[,] or a clearly erroneous standard was applied." *Id.* (citation omitted).

## DISCUSSION

### 1. Equitable Distribution

¶8.     To equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets. *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994); *Ferguson*, 639 So. 2d at 928. In

_____

[4] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

*Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994), our supreme court stated that all marital assets are subject to needed equitable distribution in accordance with the factors provided in *Ferguson*. "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside of the marriage." *Hemsley*, 639 So. 2d at 914. We review a chancellor's equitable division under the familiar manifest-error standard of review. *Vaughn v. Vaughn*, 56 So. 3d 1283, 1288 (¶17) (Miss. Ct. App. 2011).

¶9.     Neil argues that the chancellor failed to properly classify and distribute the following assets and liabilities: the marital home, Christina's Public Employees' Retirement System (PERS) account, the Chase credit card debt, the Bank of America credit card debt, the IRS deficiency, and certain medical and dental bills.

### a. Contribution

¶10.    Neil argues that the chancellor erred in failing to consider the amounts paid toward the marital property since the June 2, 2011 temporary order. However, the chancellor specifically stated he considered the evidence relevant to the "demarcation line," or temporary order, as to the equitable distribution of marital property. The record reflects that he indeed recognized that Neil had paid $40,482 towards the house note since the temporary order. The chancellor further stated that Neil had financially contributed to the accumulation of marital property more than Christina. However, the chancellor also recognized that

5

Christina contributed more to the stability and harmony of the marital family and relationships as a stay-at-home mom. The parties stipulated that the equity in the home amounted to $99,000 or $100,000. Ultimately, the chancellor awarded Christina $45,000 in equity, and Neil received around $55,000 in equity. We find substantial evidence in the record to support the chancellor's decision.

### b. Classification of Assets

¶11. Neil also argues that the chancellor should have considered Christina's PERS account, credit cards, and the children's medical and dental bills as marital assets.

¶12. Neil claims that he is entitled to a portion of Christina's PERS funds since she was awarded one-half of two of his federal retirement plans. On her 8.05, Christina listed her PERS account balance as $6,370. The chancellor did not address Christina's retirement account in his final judgment.

¶13. Neil had four retirement accounts. On his 8.05, he listed his FERS account balance as $10,418.20 and his TSP balance as $161,000. Neil did not provide the account balances for his military retirement or Ready Reserve TSP. The chancellor classified all of Neil's accounts as marital property subject to equitable distribution. The court awarded Christina half of Neil's FERS TSP as of June 2011 (the date of the temporary order), in the amount of $58,557.49, and half of his FERS account funds. He further stated that Christina, as the former spouse of a federal employee, would receive 50% of the FERS account for 135 months (March 2002–June 2011). Christina did not receive any percentage from Neil's

6

military retirement or Neil's Ready Reserve TSP account.

¶14.     Neil next argues that the chancellor committed manifest error by failing to address his Chase Credit card debt and Bank of America credit card debt in the equitable distribution of marital property.  In Neil's 8.05, both credit cards are stated in his name only.  Neil also agreed in the temporary order to pay both credit card bills.

¶15.     Neil finally claims that the chancellor erred in failing to equitably apportion the minor children's medical and dental bills listed in Neil's 8.05.  Christina did not list these bills in her 8.05.  In his bench order, the chancellor evaluated all of Neil's obligations to the minor children.  He did not specifically address the expenses listed in Neil's 8.05.  Rather, the chancellor stated that, as part of the consent to divorce, Neil was required to maintain a major policy of insurance for medical and hospitalization on all three children.  The chancellor then ordered Christina to pay 35% and Neil to pay 65% of all doctor, dental, prescription, drug, orthodontic, optical, hospital, medical, and other healthcare expenses for the minor children that are in excess of and/or not covered by required insurance.

¶16.     Neil's attorney had the responsibility to inform the chancellor that he had failed to consider certain accounts at the time he divided the marital estate. *See McIntosh v. McIntosh*, 977 So. 2d 1257, 1270 (¶46) (Miss. Ct. App. 2008).  The attorney should have filed a motion to amend the final judgment.  He did not.  Because the issue was not raised at the trial level, we find it procedurally barred.  *Id.*  (citations omitted).

   **c.  IRS Deficiency**

¶17. Neil claims the chancellor erred in holding him responsible for paying the IRS deficiency of $4,800 on his 2011 taxes. The chancellor stated that the deficiency occurred before and after Neil and Christina were estranged. The chancellor further stated that "[t]he [IRS] . . . concluded that Neil is the taxpayer liable for paying the deficiency." Thus, he held Neil liable for the income tax deficiency, incurred significantly because of the withdrawal of funds from the Stifel-Nicolaus investment account in February 2011 and April 2011. We find the chancellor's decision supported by substantial evidence.

### 2. Alimony

¶18. "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." *Armstrong*, 618 So. 2d at 1280 (citations omitted). Permanent alimony should only be considered where one spouse is left with a deficit. *See id.* "[I]f the marital assets, after equitable division and in light of the parties' [nonmarital] assets, will adequately provide for both parties, then no more need be done." *O'Brien v. O'Brien*, 149 So. 3d 508, 515 (¶23) (Miss. Ct. App. 2014) (citation and internal quotation marks omitted).

¶19. Neil argues that the chancellor failed to divide the parties' marital assets and debts before awarding alimony. However, the record reflects that the chancellor meticulously discussed the parties' marital assets and liabilities and determined the value of each of their estates prior to discussing the *Armstrong* factors, which are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party;

8

(4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home; (7) the age of the parties; (8) the standard of living of the parties; (9) the tax consequences of the support decree; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12) any other factor deemed to be fair and equitable. *Armstrong*, 618 So. 2d at 1280.

¶20. The chancellor considered Christina's age, forty-three, and Neil's age, forty-five. He recognized they were married for over eighteen years. Neil is employed at maximum earning capacity as an air traffic controller, while Christina is employed as an assistant physical education teacher. Both parties agreed that Christina would have exclusive physical and legal custody of the three children, and that Neil would pay $1,219.27 a month in child support. Neil and Christina also agreed that Neil would maintain a life insurance policy with the children as beneficiaries. The chancellor acknowledged that Christina's monthly gross income of $1,144.11 was exceedingly less than Neil's monthly gross income of $6,728.36. He noted that Neil pays the house note in the amount of $1,557,17 per month. Neither party was assigned marital fault.

¶21. The chancellor, in his findings of fact, clearly discussed the facts pertaining to each of the *Armstrong* factors as related to the parties. Ultimately, the chancellor determined that Christina would need $400 a month in alimony to account for the deficit between her income and expenses. After review of the record, we find that the chancellor's judgment was supported by substantial evidence. *See C.A.M.F. v J.B.M.*, 972 So. 2d 656, 666-67 (¶44)

9

(Miss. Ct. App. 2007).

### 3. Child Support

¶22.    Neil argues that the chancellor erred in not modifying his monthly child support payments. In the consent to divorce, Neil agreed to pay $1,219.27 a month in child support. At trial, his attorney made an ore tenus motion to adjust a previous calculation error. Neil claimed that he was only required to pay $1,063 a month in child support, not $1,219.27. The chancellor did not modify the payment amount.

¶23.    Mississippi Code Annotated section 43-19-101(1) (Supp. 2014) provides guidelines for calculating child support. For three children, the suggested amount is 22% of the payor's adjusted gross income. *Id*. The consent to divorce specified Neil's obligation to pay $1,219.27 a month in child support, which, according to Neil, is more than 22% of his adjusted gross income. Neil argues the amount, applying the 22% statutory guideline, should instead be $1,063.

¶24.    The chancellor properly overruled Neil's motion. The consent to divorce listed child support as a stipulated issue, not a contested issue. Further, the agreement carried with it implied findings by the chancery court regarding Neil's ability to pay according to the agreement as well as Christina's needs to support their three children. Our supreme court has held that "settlement agreements entered into by divorcing spouses . . . become a part of the decree and enforceable as such as though entered by the court following contested proceedings." *Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990) (citations omitted).

10

¶25. "Modification of child support may be warranted only where there is a showing of an after-arising material change in circumstances regarding one or more of the interested parties . . . ." *Setser v. Piazza*, 644 So. 2d 1211, 1215 (Miss. 1994) (citing *Gregg v. Montgomery*, 587 So. 2d 928, 931 (Miss. 1991)). Neil failed to present any evidence that his circumstances, or Christina and the children's circumstances, have changed since the agreement was signed. We find no error in the chancellor's ruling.

## CONCLUSION

¶26. We find that the chancellor's equitable distribution was supported by substantial evidence. We also find the chancellor acted within his discretion to award Christina $400 a month in alimony and $1,219.27 a month in child support. Therefore, we affirm the chancellor's ruling.

¶27. **THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**