# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00142-COA

**GARY MOSHER**                                                                          **APPELLANT**

**v.**

**LORI MOSHER**                                                                          **APPELLEE**

DATE OF JUDGMENT:                    10/08/2014
TRIAL JUDGE:                         HON. JENNIFER T. SCHLOEGEL
COURT FROM WHICH APPEALED:           HARRISON COUNTY CHANCERY COURT,
                                     SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:              KELLY MICHAEL RAYBURN
ATTORNEY FOR APPELLEE:               LORI MOSHER (PRO SE)
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:             GRANTED THE PARTIES A DIVORCE,
                                     DIVIDED THE MARITAL PROPERTY, AND
                                     AWARDED THE APPELLEE ALIMONY
                                     AND CHILD SUPPORT
DISPOSITION:                         AFFIRMED: 05/24/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     The Harrison County Chancery Court granted Gary and Lori Mosher a divorce based on irreconcilable differences.  On appeal, Gary contends the chancellor awarded Lori too much child support, too much of his military retirement, too much of the marital property, and too much alimony.  As we find Gary's arguments either procedurally barred or without merit, we affirm.

**FACTS**

¶2.    Gary and Lori married on November 7, 1987, and they separated in November 2010. By the time of the divorce hearing in January 2014, the parties had been married twenty-six years. Gary was forty-nine years old, retired from the Navy, and working as a civilian contractor at the Stennis Space Center. Lori was forty-seven and working as an assistant school teacher. Two children were born to the marriage. At the time of the hearing, the older son was emancipated, but the younger daughter, eighteen years of age, was not.

¶3.    The parties submitted several issues to the court, including whether Lori was entitled to alimony. Lori represented herself at the hearing, and, on appeal, she has not filed an appellee's brief.

**STANDARD OF REVIEW**

¶4.    Lori's failure to file a brief does not require automatic reversal of the chancellor's judgment. In *Rogillio v. Rogillio*, 101 So. 3d 150, 153 (¶12) (Miss. 2012), the Mississippi Supreme Court explained:

> [F]ailure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of [the] appealing party, that there was no error. Automatic reversal is not required where the appellee fails to file a brief. However, the appellant's argument should at least create enough doubt in the judiciousness of the trial court's judgment that this Court cannot say with confidence that the case should be affirmed.

(Internal citations and quotation marks omitted). Furthermore:

> When matters on appeal touch the welfare of a minor child, then regardless of whether a party filed a brief, this Court will reach the merits of the issues in this appeal, though we proceed unaided by a brief from the appellee. . . . If the record is large or complicated and [the appellant] thoroughly briefed the

2

issues, provided applicable citations of authority, and presented an apparent case of error, then we should consider [the appellee's] failure to file a brief as his confession of error and reverse the chancellor's judgment. But if the record can be conveniently examined, and the record reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, then we should disregard the fact that [the appellee] failed to file a brief.

*Roberts v. Roberts*, 110 So. 3d 820, 825 (¶¶10-11) (Miss. Ct. App. 2013) (internal citations and quotation marks omitted).

¶5. We also recognize that the chancellor's findings of fact should be affirmed when supported by substantial credible evidence. *Id.* at 824 (¶9). "This Court only disturbs a chancellor's findings if they are manifestly wrong or clearly erroneous or if the chancellor applied an incorrect legal standard." *Pearson v. Pearson*, 121 So. 3d 266, 268 (¶6) (Miss. Ct. App. 2013) (citation omitted). Conclusions of law, however, are reviewed de novo. *Id.*

**DISCUSSION**

**1. Military Retirement**

¶6. The parties agreed that Lori would receive "one-half of [Gary's] military retirement," but they did not specify a monthly amount. The chancellor found that Gary had two sources of military retirement income, his "disposable retired pay" and his "[Department of Veteran Affairs] disability compensation," about $401 per month, which Gary had elected to receive in lieu of a dollar-for-dollar portion of his disposable retired pay. Half of the total, after

3

adjustments, was $1,178.95.[1] VA disability compensation is not subject to property division under federal law, so the chancellor awarded Lori a larger share of the disposable retired pay, resulting in an award of one-half of the overall amount Gary received every month from what the chancellor found were his military retirement sources.

¶7. On appeal, Gary contends that the chancellor "lacked the authority to decide this issue," as the parties agreed Lori would receive only half of his military retirement, which Gary implicitly equates to his disposable retired pay. He cites to Mississippi Code Annotated section 93-5-2(3) (Rev. 2013), which he notes requires the parties to an irreconcilable differences divorce to consent to submit issues to the chancery court for adjudication, and *Gordon v. Gordon*, 126 So. 3d 922, 925-26 (¶10) (Miss. Ct. App. 2013), where this Court found no error when a chancery court granted an irreconcilable differences divorce without dividing marital property, including a military retirement account.

¶8. This argument misses the mark. Although it is true that the parties here agreed to divide the "military retirement" equally, the property settlement agreement did not specify what that was. Property settlement agreements are contracts, and like all contracts, there are sometimes disputes regarding the meaning of their terms. *Gaiennie v. McMillin*, 138 So. 3d 131, 135 (¶8) (Miss. 2014). It is apparent that the chancery court interpreted the parties' agreement rather than disregarding it as Gary contends. The chancellor dedicated nearly ten

---

[1] The chancellor deducted the cost of a survivor annuity, which was paid from the retirement income.

of the fifty-six pages of her written judgment to this question.

¶9.     As to the interpretation of the agreement, while it is clear Gary does not agree with the chancellor's decision, he has not briefed that issue. "[T]here is a presumption that the judgment of the trial court is correct and the burden is on the Appellant to demonstrate some reversible error to [the appellate court]." *Birkhead v. State*, 57 So. 3d 1223, 1231 (¶28) (Miss. 2011); *see also* M.R.A.P. 28(a)(6). Gary has failed to meet his burden of showing error on this issue.

### 2. Property Division

¶10.    Gary next contends that the chancellor erred by awarding Lori too great a share of the parties' marital estate, about $10,500 more than he received.

¶11.    "To equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets [based upon the *Ferguson*[2] factors]." *Anderson v. Anderson*, 174 So. 3d 925, 929 (¶8) (Miss. Ct. App. 2015) (citations omitted).

¶12.    The chancellor found that the parties had valued the total marital estate, as designated in their Rule 8.05 financial statements, at $49,566 and the total marital debt at $39,045.[3] Most of the assets and debts had already been divided, leaving only a few things for the chancellor to divide – the debt on a vehicle, Gary's military survivor annuity, and the parties'

_____

[2] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[3] *See* UCCR 8.05. The chancellor noted that this did not include various household items the parties had already divided.

5

respective life insurance policies.

¶13.    The chancellor then reviewed the *Ferguson* factors to equitably divide the couple's

remaining estate.  Those factors are:

> 1.  Substantial contribution to the accumulation of the property.  Factors to be considered in determining contribution are as follows:
>
> > a.  Direct or indirect economic contribution to the acquisition of the property;
> >
> > b.  Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
> >
> > c.  Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2.  The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3.  The market value and the emotional value of the assets subject to distribution.
>
> 4.  The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> 5.  Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> 6.  The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
>
> 7.  The needs of the parties for financial security with due regard to the

combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶14.   The chancellor first discussed each party's contributions to the accumulation of marital assets. Both parties had worked through most of the marriage, but Lori made less money because of frequent moves necessitated by Gary's career in the Navy. Lori also made more domestic contributions to the marriage than Gary. The chancellor noted that Gary had an affair in 2010 and that the parties separated in 2011. After the separation, the marital home was lost to foreclosure, and Lori had accumulated debt to cover her expenses. The chancellor concluded that this first factor favored awarding Lori a greater share of the marital estate.

¶15.   The chancellor then discussed the parties' financial and physical needs and their emotional attachments to assets. Gary had purchased Lori a Lexus but had stopped contributing to the car payments when he left the marital home. As a result, while no debt remained on Gary's automobile and motorcycle, $13,880 was still owed on Lori's vehicle. The chancellor also found that Lori possessed a greater emotional attachment to the marital home, which was lost to a foreclosure Gary was in a better position to prevent. Gary earned enough income to pay his expenses while Lori, who possessed the greater need, lacked the income necessary to meet her expenses. These factors favored Lori in the distribution of the marital estate.

¶16. Considering the parties' separate estates, the chancellor found that the assets contained in each were of almost equal value. However, the chancellor also recognized that Lori's net worth was nearly half of Gary's because she possessed more debt and a lower monthly income, while Gary's income would allow him to pay off debt assigned to him. Therefore, the chancellor found that this factor favored Lori.

¶17. The chancellor also discussed the parties' use and possession of the assets and the custody of the minor child. Lori received primary custody of the couple's daughter. The chancellor found that this contributed to the need for Lori to own a vehicle without fear of losing it due to an inability to make the payments. Thus, the chancellor found that this factor also weighed in Lori's favor.

¶18. The chancellor next considered the effect of the marital distribution on the need for alimony and the extent to which the property division might be able to eliminate the need for periodic payments and other potential future sources of friction between the parties. The chancellor concluded that alimony would still be required, regardless. Along with this, the chancellor found that Lori possessed a greater need than Gary for financial security "due to a disparity of income, an overall financial disparity, and Lori's lower earning capacity."

¶19. In considering the income disparity between the parties, the chancellor determined the parties' monthly adjusted gross incomes and expenses. The chancellor found that, including child support, Lori's monthly adjusted gross income after equitable distribution totaled $3,456 and that her monthly expenses totaled $3,310, leaving a monthly surplus of $146. By

comparison, the chancellor found Gary's monthly adjusted gross income after equitable distribution totaled $5,542 and that his monthly expenses totaled $3,176, leaving a monthly surplus of $2,366.

¶20. In addition to the disparity in the parties' incomes, the chancellor found that an overall financial disparity existed between the parties. The chancellor noted that Lori had a greater share of the marital debt, but she needed financial security more than Gary because sacrifices she had made for the marriage left her with a lower earning capacity. These factors all weighed in Lori's favor when distributing the marital estate.

¶21. After the equitable division, Lori possessed marital assets totaling $33,168 (or 67% of the total) and $22,605 (58%) of marital debt. Gary received $16,398 (33%) of assets and $16,440 (or 42%) of debt. The chancellor noted that this left Lori with an estate valued at $10,563 and Gary with a deficit of $42.[4]

¶22. In addressing Gary's assignment of error, this Court reviews the chancellor's equitable division of the parties' marital estate under the familiar manifest-error standard of review. *See Anderson v. Anderson*, 174 So. 3d 925, 929 (¶8) (Miss. Ct. App. 2015).

¶23. Gary complains that the chancellor failed to adequately explain and support an unequal distribution of the marital estate, but, as we have seen, the chancellor's opinion reflects otherwise. She addressed the relevant factors set forth in *Ferguson* and discussed

---

[4] The chancellor included the present values of the life insurance policies. She did not assign a value to the survivor annuity, which was awarded to Lori, but the parties were essentially ordered to share its cost going forward.

9

their application to the present case, concluding that Lori was entitled to a greater share. "An equitable division of property does not always mean an equal division of property." *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶13) (Miss. 2015) (citation omitted). After reviewing the record, we find that substantial evidence supported the chancellor's decision. This issue is without merit.

### 3. Alimony

¶24. Gary next contends that the chancellor erred by awarding Lori permanent alimony. He argues that, following equitable distribution of the couple's marital estate, no disparity existed to justify the award of alimony. Furthermore, Gary asserts that the alimony award deprives him of a reasonable and decent standard of living.

¶25. With regard to permanent alimony, this Court has previously stated:

> Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion. Permanent alimony should only be considered where one spouse is left with a deficit. If the marital assets, after equitable division and in light of the parties' nonmarital assets, will adequately provide for both parties, then no more need be done.

*Anderson*, 174 So. 3d at 930 (¶18) (citations and internal quotation marks omitted).

¶26. After dividing the marital estate, the chancellor found that a disparity still existed between the parties. Among other factors, the chancellor considered Lori's low monthly income and the fact that Gary's child-support obligation would cease in April 2016 when the parties' daughter reached the age of majority. When the child-support payments ceased, Lori would likely face an income deficit due to her monthly expenses exceeding her income.

10

Because of this overall financial disparity, the chancellor concluded that an award of permanent alimony was appropriate. She then analyzed the familiar *Armstrong* factors to determine the appropriate amount of alimony, "comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree." *Steiner v. Steiner*, 788 So. 2d 771, 776 (¶16) (Miss. 2001) (citing *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)).

¶27. The chancellor first considered the parties' health and earning capacities. The chancellor found that Gary, age forty-nine, and Lori, age forty-seven, were both in good health. The chancellor also found that Gary's earning capacity exceeded Lori's due to his education and employment experience. This factor favored an award of alimony.

¶28. The chancellor next reviewed the parties' needs. The chancellor stated that Lori would soon lose the child support she received when the parties' daughter reached the age of majority. At that point, Lori would most likely not have income sufficient to pay her expenses. By contrast, Gary could meet his needs with a substantial surplus. Because Lori possessed a greater financial need and a lower earning capacity, the chancellor found that this factor also favored an award of alimony.

¶29. Based on previous findings about the parties' obligations and assets, the chancellor found that this factor further favored an award of alimony. The parties' ages and their twenty-six-year marriage likewise favored an award of alimony, as did Lori's physical custody of the couple's daughter.

11

¶30. In considering the parties' standard of living during the marriage, the chancellor found that Lori was accustomed to Gary's financial support. After the separation, Gary's refusal to cooperate with Lori contributed to the foreclosure of the marital home. Without Gary's support, Lori was unable to make ends meet, and her standard of living suffered. These findings also favored an award of alimony.

¶31. The chancellor next discussed the tax consequences and the parties' fault or misconduct. She found that the tax consequences supported an award of alimony, and that both parties contributed to the breakdown of the marriage, but Gary bore a greater share of the fault since he had an affair and then severed ties with his wife and children. Gary had also significantly contributed to dissipation of assets, i.e., the loss of the parties' home. After concluding that these factors favored an award of alimony, the chancellor considered the following additional "just and equitable" factors:

> [T]he lack of a temporary order . . . ; the lack of adequate financial support for Lori over a significant period of time[, which caused the loss of the marital] home in foreclosure and [caused] her net worth to fall into the negative; Lori's potential for an income deficit; Gary's increasing income surplus; the overall financial disparity between the parties in Gary's favor; and the underpayment of monthly [m]ilitary [r]etirement [b]enefits for approximately [thirty-three] months to Lori by Gary, which inured to Gary's benefit . . . approximately $18,308.40.

¶32. Based on her findings, the chancellor concluded an award of alimony was appropriate. Ultimately, she awarded Lori $1,000 per month in permanent alimony.

¶33. Upon review, we find no abuse of discretion in the alimony award. The record reflects that the chancellor thoroughly addressed the *Armstrong* factors and concluded that

12

each factor supported an award of alimony. The disparity found by the chancellor could not be adequately addressed through property division alone. Because we find substantial credible evidence supported the chancellor's findings of fact, this assignment of error lacks merit.

### 4. Child Support

¶34. Finally, Gary argues that the child support award exceeded the amount specified in the property settlement agreement. This issue is procedurally barred because Gary failed to raise it before the chancery court. We also find that this Court cannot "reinstate" the agreement, because it was never accepted in the first place.

¶35. The proposed property settlement agreement included a provision that Gary would pay Lori $727 per month for the support of their daughter. After hearing extensive proof regarding the parties' finances and living situations, the chancellor found that this amount fell short of adequately and sufficiently providing for the child. The chancellor found the minimum to be $775.85, derived by applying the statutory child support guidelines to Gary's adjusted gross income. The chancellor went ahead and granted the divorce, with the child support amount set to the minimum that was permissible – an additional $48.85 per month.

¶36. Gary made no complaint about this to the chancery court. He acquiesced to the divorce and then completely abandoned the proposed support agreement by contending, in

his motion for a new trial, that the child was emancipated and not eligible for any support.[5] Since Gary did not raise this issue before the trial court, it is procedurally barred on appeal. *See Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012).

¶37.    Even if we were to disregard the procedural bar, this Court could not do as Gary asks and modify the child support award.   The irreconcilable differences divorce statute, Mississippi Code Annotated section 93-5-2(3) (Rev. 2013), provides in relevant part, with our emphasis added:

> No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties *and found to be adequate and sufficient by the court* and included in the judgment of divorce.

¶38.    The chancellor, after hearing extensive proof, found that the minimum provision for the child that would be adequate and sufficient would be $48.85 per month more than the parties had agreed.  That decision must be reviewed for an abuse of discretion – and clearly there was no abuse of discretion, as the chancellor found the required support equal to the amount that is presumptively correct under the child-support guidelines.  While we generally affirm agreements to pay *more* support than required, and we have, at least once, affirmed an agreement to pay less than the guidelines amount after it was approved by the chancellor (*Arrington v. Arrington*, 80 So. 3d 160, 168-70 (¶¶28-36) (Miss. Ct. App. 2012)), we cannot

---

[5] In fact, during the hearing on the motion for a new trial, Gary's attorney recited the $775.85 in monthly support ordered by the court, without raising any complaint about the amount.

14

find an abuse of discretion here. It is axiomatic that child support is for the benefit of the child and cannot be bargained away by the custodial parent. *See, e.g., Durr v. Durr*, 912 So. 2d 1033, 1038 (¶14) (Miss. Ct. App. 2005). The chancellor rightly refused to accept a proposed agreement that did not provide adequate and sufficient support for the child.

¶39. Gary contends that the divorce judgment must be modified to the lower number the parties had originally agreed. But, as we explained above, the chancellor did not abuse her discretion in rejecting the proposed agreement. If Gary contends that the chancery court did not have his consent to resolve the child-support issue, the only remedy that this Court could award on appeal is to set aside the divorce, as no divorce can be entered without a finding of an adequate and sufficient agreement or consent to submit the issue to the court. *See* Miss. Code Ann. § 93-5-2(3). Gary has never asked that the divorce be set aside. Thus, even if this issue were not procedurally barred, Gary is entitled to no relief he has requested.

¶40. **THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE AND JAMES, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND GREENLEE, J.**

**CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶41. Because I would find that the chancellor erred by awarding Lori a greater amount of child support than the amount agreed to in the parties' "Consent to Adjudicate," I would

reverse and render with respect to that issue. I therefore concur in part and dissent in part from the majority's opinion.

¶42. Gary argues that the chancellor erred by awarding Lori $775.85 a month in child support until the couple's daughter reached the age of majority. Gary contends that the parties never submitted the issue of child support to the chancellor for adjudication since they had already agreed to the monthly amount of $727 in their "Consent to Adjudicate." On appeal, Gary asserts that the chancellor's action of unilaterally increasing the monthly amount of child support exceeded her authority since the parties never consented to submit this issue to the chancellor for her determination as required by Mississippi Code Annotated section 93-5-2(3) (Rev. 2013).

¶43. In *Sanford v. Sanford*, 124 So. 3d 647, 648 (¶1) (Miss. 2013), the supreme court recognized that Mississippi statutory law provides two distinct paths for a couple seeking an irreconcilable-differences divorce. Under the first option, the couple can "provide a written agreement settling the custody and maintenance of any children of the marriage and property rights; if the chancellor deems the terms adequate and sufficient, he or she may incorporate the agreement in the judgment and grant a divorce." *Id.* (citing Miss. Code Ann. § 93-5-2(2) (Rev. 2013)).

¶44. Under the second option for an irreconcilable-differences divorce, a couple consents to allow the chancellor to decide certain disputed issues. *Id.* (citing Miss. Code Ann. § 93-5-2(3)). "The consent must: (1) be in a writing signed by both parties; (2) state that the couple

16

voluntarily agrees to permit the chancellor to decide the issues designated in their written consent; and (3) state that the parties understand that the chancellor's decision will be binding and lawful." *Id.* Following the parties' consent pursuant to section 93-5-2(3), "[a]ll matters involving the custody and maintenance of any children of the marriage and property rights must then be either adjudicated by the chancellor or agreed upon by the parties and deemed adequate and sufficient before a divorce can be granted." *Id.*

¶45.    The second option for an irreconcilable-differences divorce, as set forth in section 93-5-2(3), applies to the instant appeal.  The record reflects that, in accordance with section 93-5-2(3), Gary and Lori agreed to submit only certain issues to the chancellor to adjudicate, and they provided no consent to permit the chancellor to adjudicate child support.[6]  While the chancellor acknowledged the parties' prior agreement on the amount of child support, she still found that she retained the authority to determine the adequacy and sufficiency of the agreed-upon amount.  As previously stated, the chancellor made this finding despite the parties' lack of a "Consent to Adjudicate" this issue as required by section 93-5-2(3).  Upon finding that the child-support amount failed to satisfy "the statutorily required minimum of 14% of Gary's adjusted gross income," the chancellor increased Gary's monthly child-support payment from $727 to $775.85.

¶46.    "Divorce in Mississippi is a creature of statute.  Original jurisdiction to grant divorces

---

[6] *See* Miss. Code Ann. § 93-5-2(3) (establishing that parties may consent to an irreconcilable-differences divorce and may permit the chancellor to decide any issues upon which they cannot agree).

in this State was vested in the legislature[,] and the subsequent jurisdiction of the chancery court over divorce is derived from the assignment of that authority to the chancery court by the legislature." *Massingill v. Massingill*, 594 So. 2d 1173, 1175 (Miss. 1992). Upon review, I would reverse and render the chancellor's judgment as to the issue of child support since the parties never submitted the issue to her for adjudication as required by section 93-5-2(3).[7] In the parties' "Consent to Adjudicate," they agreed Lori would receive $727 a month in child support, and as stated, they never submitted the issue to the chancellor for adjudication. *See* Miss. Code Ann. § 93-5-2(3).[8] Therefore, the chancellor erroneously adjudicated the issue by changing the amount of support without the parties' consent to adjudicate. *See Finch v. Finch*, 137 So. 3d 227, 237 (¶33) (Miss. 2014) (finding that child support was ordered pursuant to the parties' agreement in their consent to adjudicate and could not be modified absent a material change in circumstances).

¶47. In addition to finding no "Consent to Adjudicate" child support in the record, I also acknowledge that the record shows Gary filed a posttrial motion to reconsider and for a new trial. *See* M.R.C.P. 59. Accordingly, I would reverse the chancellor's award of child support since the parties submitted no "Consent to Adjudicate" that issue in this irreconcilable-

_____

[7] Divorce statutes must be strictly construed. *See Massingill*, 594 So. 2d at 1178.

[8] *See also Crider v. Crider*, 904 So. 2d 142, 145-48 (¶¶7-15) (Miss. 2005) (discussing the irreconcilable-differences divorce statute).

differences divorce action.[9]  I would also render as to this issue and order that the amount of child support reflect $727, which constitutes the amount agreed to by the parties in their "Consent to Adjudicate."  I therefore concur in part and dissent in part from the majority's opinion.

**GRIFFIS, P.J., AND GREENLEE, J., JOIN THIS OPINION.**

---

[9] *See Short v. Short*, 131 So. 3d 1149, 1152 (¶10) (Miss. 2014); Miss. Code Ann. § 93-5-2(3).  *See also Bougard v. Bougard*, 991 So. 2d 646, 649-50 (¶19) (Miss. Ct. App. 2008) (finding that the chancellor and the parties were bound by the parties' agreement).