# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00883-COA

**KENNETH PEYTON BRYANT**                                    **APPELLANT**

**v.**

**JENNIFER HART BRYANT**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2020 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEYS FOR APPELLEE: | CHARLES E. WINFIELD |
| | ASHLYN BROWN MATTHEWS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/07/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1.     Kenneth Bryant appeals from an order determining that his three minor children must attend school in the Hernando school district or, in the alternative, that he must pay for private school.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jennifer and Kenneth were married from August 2, 2009, until their divorce (based on irreconcilable differences) on March 30, 2016.  Three children were born during their marriage: the eldest child was born in 2011, and twins were born in 2014.  The divorce decree incorporated a Property, Child Support, and Child Custody Agreement (PSA) that set forth stipulations as to all matters concerning the minor children.

¶3. The PSA provided that Jennifer and Kenneth agreed to share legal and physical custody of the children, and there was a specific provision regarding the children's education and where they could attend school. The PSA stipulated that if they could not agree about major decisions concerning the children, Kenneth had final decision-making authority. There was also a clause stating that the PSA could be submitted to the chancellor for "approval or disapproval."

¶4. Kenneth and Jennifer had previously amended the terms of the PSA. On July 26, 2016, Jennifer filed a petition for contempt alleging that Kenneth had incessantly harassed her and the family since the entry of the divorce decree and that he threatened to withhold the minor children from her if she did not meet his demands. Kenneth responded, alleging that Jennifer had not provided him with a copy of her drug test results as commanded in the divorce decree. Additionally, he alleged that Jennifer denied him the right to speak with the children when they were in her custody. On May 30, 2017, the parties entered into an "Agreed Order Modifying Visitation" altering the parties' weekly periods of custody and limiting their means of communications to text messages and emails. This modification did not disturb the parties' joint legal custody or the terms of the children's private school and child care.

¶5. In 2020, when the actions giving rise to this appeal occurred, Kenneth and his wife Alicia, a teacher in Lake Cormorant, lived in Hernando, as did Jennifer and the children. Per the PSA, the eldest child had been enrolled in Magnolia Heights, a private school. The twins were to start kindergarten in the fall of 2020. A few months prior to this time, Kenneth

2

informed Jennifer that he would be enrolling all the children in the Lake Cormorant public school system. In keeping with the PSA, Jennifer filed a motion requesting that the chancellor order the children to attend Hernando public schools.[1]

¶6. Prior to the hearing on Jennifer's motion, the chancellor had read the parties' submissions, and she came to the conclusion that Magnolia Heights was not an option for either party. Accordingly, the only schools under consideration were Lake Cormorant and Hernando elementary schools. Testimony was given regarding the parties' ability to pay for Magnolia Heights, and the chancellor inferred that Jennifer could not afford half of the tuition. Kenneth testified that he could afford his part of the tuition, but Alicia wanted to send the children to Lake Cormorant.

¶7. At the conclusion of the hearing, the chancellor ruled that all three children should be enrolled in the Hernando school district. At the request of Kenneth's attorney, the chancellor also ordered that if Kenneth is able to afford private school for all three children and if both parents decide that would be in the children's best interests, Kenneth would be solely responsible for all costs associated with them attending private school. Kenneth filed his notice of appeal from the July 29, 2020 order and argues that the chancellor erred in ordering that his three minor children must attend school in the Hernando school district or, in the alternative, that he must pay for private school.

## STANDARD OF REVIEW

---

[1] Jennifer had "Collective School Rankings" admitted into evidence. Based on this information, she testified that Hernando ranked higher than Lake Cormorant and that students at Hernando tested above average in several subjects. Ultimately, the court did not mention this research in its ruling.

¶8. This Court has a limited standard of review in domestic relations cases, and "under the standard of review utilized to review a chancellor's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the chancellor's decision on appeal unless his findings were manifestly wrong." *Nelson v. Nelson*, 271 So. 3d 613, 616 (¶9) (Miss. Ct. App. 2018). But "[w]hile a chancellor's decisions in a divorce action are reviewed for manifest error, a property settlement agreement is a contract, and contract interpretation is a question of law, which is reviewed de novo." *McFarland v. McFarland*, 105 So. 3d 1111, 1118 (¶21) (Miss. 2013) (citing *Harris v. Harris*, 988 So. 2d 376, 378 (¶8) (Miss. 2008)).

**DISCUSSION**

¶9. Kenneth maintains that the chancellor erred in ordering that the children attend a public school in Hernando. Kenneth also argues the chancellor erred in ordering that if he wanted the children to attend private school, he was responsible for the payment of all tuition. These two issues are inextricably intertwined, therefore we will discuss them simultaneously.

¶10. Our Supreme Court has stated that when parties have complied with the irreconcilable-differences divorce statute, their agreement concerning "custody, support, alimony and property settlement agreement becomes a part of the final decree for all legal intents and purposes." *Switzer v. Switzer*, 460 So. 2d 843, 845 (Miss. 1984). Furthermore, "for purposes of subsequent modification proceedings, alimony and child support provisions found in an agreement made incident to an irreconcilable differences divorce are treated the

4

same as though the chancellor had made the award after a contested divorce trial." *Id.* at 846.

The Supreme Court further clarified:

> A divorce agreement is "no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." *East v. East*, 493 So. 2d 927, 931-32 (Miss. 1986). Similarly, in *Bell v. Bell*, 572 So. 2d 841, 844 (Miss. 1990), we held that when parties in a divorce proceeding have reached an agreement that a chancery court has approved, we will enforce it, absent fraud or overreaching, and we take a dim view of efforts to modify it just as we do when persons seek relief from improvident contracts.

*Ivison v. Ivison*, 762 So. 2d 329, 334 (¶14) (Miss. 2000).

¶11. "Property settlement agreements are contractual obligations." *In re Est. of Hodges*, 807 So. 2d 438, 445 (¶26) (Miss. 2002). "Property settlement agreements [between parties to a divorce] are contracts, and like all contracts, there are sometimes disputes regarding the meaning of their terms." *Mosher v. Mosher*, 192 So. 3d 1118, 1121-22 (¶8) (Miss. Ct. App. 2016). This is the situation currently before us. Relevant excerpts of the agreement provided:

> **11. CHILD CUSTODY AND VISITATION.** The parties shall share joint legal and physical custody of the children. For the benefit of the parties, in all matters where "full joint legal" custody applies, as here expressed or as defined by the 1983 Mississippi Legislature in Ch. 513, Section 1 and 2 (Section 93-5-24), "joint legal custody" here shall mean that the parents . . . shall share the decision-making rights, the responsibilities, and the authority relating to the . . . education . . . of the children . . . [i]n the event that the parties are unable to agree upon major life decisions affecting the child/children, *the Father shall have the final decision making authority*.
>
> . . . .
>
> **17. PRIVATE SCHOOL/CHILD CARE.** Both the Mother and Father agree that the [eldest] minor child . . . is currently enrolled at Magnolia Heights School. Each party shall be responsible for one-half (1/2) of the costs

5

of tuition and extra curricular costs for said minor child. Further, each party shall be responsible for uniforms and school lunches for the minor child while in their care.

Both parties agree that when it is time for the twins to attend 5 year old kindergarten, if either party is financially unable to afford tuition for the said minor children, the Court will reevaluate this matter upon Motion of either party.

Further, each party shall be responsible for the costs of child care for the minor children while in their care.

(Emphasis added). The parties also specifically agreed that the PSA was subject to the court's approval or disapproval. As stated in the PSA:

**27. REPRESENTATION.** . . .
It is further agreed and understood by and between the parties that this is a full and complete contract and same may be submitted to the Court of proper venue and jurisdiction for approval or disapproval by decree or otherwise.

¶12. Kenneth argues that the chancellor's ruling to send all three children to Hernando elementary school contradicts the language in the PSA that gave him the final decision-making authority should he and Jennifer disagree on any major life decisions affecting the children. But even when parties agree, they cannot deprive a court of its authority to review provisions for support and custody. A court may alter or modify the parties' agreement with respect to these matters even if the parties intended to be bound by the agreement regardless of court approval. Deborah H. Bell, *Bell on Mississippi Family Law* § 23.09[1][b] at 798 (3d ed. 2020).

¶13. The Mississippi Supreme Court has held that chancery courts are not bound by parties' property settlement agreement, particularly when the parties agree that their agreement clearly gives the court the authority to decide any matters differently than provided by the

6

property settlement agreement. *See Gerty v. Gerty*, 296 So.3d 704, 706 (¶7) (Miss. 2020). "When the subject of the [contractual] agreement is the custody of minor children, . . . other considerations override the basic rule. The welfare of the children and their best interest is the primary objective of the law, and the courts must not [allow] contractual arrangements . . . to turn the inquiry away from that goal." *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990) (citations omitted). "The ultimate determination of the best interest of the child is a determination to be made by the court." *Torrence v. Moore*, 455 So. 2d 778, 780 (Miss. 1984).

¶14. In keeping with the language of the PSA, the chancellor reevaluated a decision that was submitted to her "for approval or disapproval." After hearing testimony presented by each side, the chancellor held that all three children should be enrolled in the Hernando school district. The chancellor reasoned that it was in the children's best interest to do so. The chancellor also took into account Jennifer's willingness to transport the children as long as Kenneth worked out-of-town. Additionally, the costs of private school tuition (should the parties agree to private school), was assessed to Kenneth at the urging of his own counsel. The chancellor awarded Kenneth exactly what he requested.

¶15. In *McManus*, the Supreme Court addressed an agreement similar to the PSA here. The parents of two minors executed a property settlement agreement and attached it as a part of the final judgment. *McManus*, 569 So. 2d at 1214. Our Supreme Court gave a "thumbnail sketch" of the parties' position:

> At the time of the divorce the parties agreed that Columbus would be the home of the children and that their primary custody would be with the mother. They

7

agreed that if the mother moved away from Columbus without the consent of the father, the custody would automatically be divested from her and placed in the father. The mother now says that that agreement should not be enforced as being contrary to public policy and the law. When she filed the complaint she contemplated remarriage and has since remarried and that it is in the best interest of the children that they be allowed to reside in another county in the state and that a change of residence is not a change of circumstance that would justify a modification of the divorce decree.

The husband, on the other hand, says that the Agreement was made by the parties freely and voluntarily and was approved by the court and should be enforced.

*Id.* at 1214-15. The chancellor found that "both father and mother are fit and proper parents to have custody of the children[;]. . . [h]owever, because of their Agreement, being the principal custodian placed her not in a preferred position." *Id.* at 1215. The chancellor held that it was beyond his authority to consider or intervene in the matter. *Id.* The Mississippi Supreme Court noted the chancellor's position "that the [a]greement was made by the parties and should be enforced *in the absence of a finding of a material change of circumstance adversely affecting the children*" and held the Lowndes County Chancery Court in error. *Id.* (emphasis added). The Court opined that "the [chancery] court simply cannot surrender or subordinate its jurisdiction and authority as to . . . circumstances . . . [that would] cause a change in custody" and held the "agreement to be void and contrary to public policy." *Id.* at 1216.

¶16. If we were to accept Kenneth's interpretation—that the chancellor's ruling is against the law and public policy—that would go against an established line of caselaw. In the case before us, we find that the chancellor's findings were not manifestly wrong. The language of the PSA gave the chancellor the authority to reevaluate the matter upon the motion of

8

either party.  Unlike *McManus*, custody of the children did not change (and was not at issue) and neither did the location or residence of the children with the entry of the order on July 29, 2020.

¶17.   The PSA clearly gave the chancellor the authority to weigh in on all matters covered therein—specifically where the children attended school.  A property settlement agreement cannot deprive the court of its authority to modify support and educational needs of a child. The decision-making power afforded Kenneth in this instance cannot and does not usurp that of the chancellor.  Finding that the chancellor did not err, we affirm.

¶18.   **AFFIRMED.**

   **CARLTON, P.J. GREENLEE, McDONALD, LAWRENCE AND SMITH, JJ., CONCUR.  McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY BARNES, C.J.**

   **WILSON, P.J., DISSENTING:**

¶19.   The parties' Property, Child Support, and Child Custody Agreement, which the chancery court approved and adopted as part of their divorce decree, grants them joint legal custody of their children but further provides that "in the event that [they] are unable to agree upon major life decisions affecting the child/children, [Kenneth] shall have the final decision making authority."  Based on this provision, Kenneth was entitled to decide where the children should attend school, and there was no legal basis for the chancellor to order the children to attend school in the Hernando school district.  Because the chancellor's decision should be reversed, I respectfully dissent.

9

¶20.    In connection with their irreconcilable differences divorce, the parties entered into a Property, Child Support, and Child Custody Agreement. The Agreement was submitted to the chancellor for approval, and the chancellor found that the Agreement's child custody provisions were adequate and sufficient. *See* Miss. Code Ann. § 93-5-2(2) (Rev. 2021). Therefore, the chancellor "ratified, approved, and adopted" the Agreement and made the Agreement part of the parties' final divorce decree.

¶21.    The Agreement includes two provisions that are relevant to the parties' present dispute regarding where the children should attend school:

> **11. CHILD CUSTODY AND VISITATION.** The parties shall share joint legal and physical custody of the children. . . .
> Provided, however, in the event that the parties are unable to agree upon major life decisions affecting the child/children, the Father shall have the final decision making authority.
>
> . . . .
>
> **17. PRIVATE SCHOOL/CHILD CARE.** Both the Mother and Father agree that the minor child, Baylor, is currently enrolled at Magnolia Heights School. Each party shall be responsible for one-half (1/2) of the costs of tuition and extra curricular costs for said minor child. Further, each party shall be responsible for uniforms and school lunches for the minor child while in their care.
> Both parties agree that when it is time for the twins to attend 5 year old kindergarten, if either party is financially unable to afford tuition for the said minor children, the Court will reevaluate this matter upon Motion of either party.

¶22.    The language of section 11 granting Kenneth "final decision making authority" is perfectly valid. As this Court has recognized, a chancellor may grant both parents joint legal custody but grant final decision-making authority to one parent in the event that the parents cannot agree on a particular decision. *See Wildman v. Wildman*, 301 So. 3d 787, 803-04

(¶36) (Miss. Ct. App. 2020) ("Mississippi statutory law and jurisprudence recognize that the chancellor may indeed allocate decision-making and duties to each parent sharing joint legal custody." (quoting *Taylor v. Timmons (In re C.T.)*, 228 So. 3d 311, 316 (¶9) (Miss. Ct. App. 2017)). Mississippi Code Annotated section 93-5-24(5) (Rev. 2021) likewise recognizes that final "decision-making . . . authority" can be "allocated" or "apportioned" under a judgment that grants both parents joint legal custody. Kenneth argues that the plain language of section 11 grants him authority to make a "final decision" regarding where his children should attend school because he and Jennifer were "unable to agree upon" this "major life decision[] affecting the . . . children."

¶23. However, Jennifer argues that the chancellor correctly ruled that section 17 of the Agreement was more specific and controlling. *See Harris v. Harris*, 988 So. 2d 376, 379 (¶12) (Miss. 2008) (interpreting a property settlement agreement/divorce decree and stating that "[o]ne . . . rule of construction is that specific language controls over general inconsistent language in a contract" (quotation marks omitted)). As set out above, section 17 provides, "[W]hen it is time for the twins to attend 5 year old kindergarten, if either party is financially unable to afford [private school] tuition for the said minor children,[2] the Court will reevaluate this matter upon Motion of either party." Jennifer argues that the chancellor's authority to "reevaluate this matter" includes not only the authority to allocate responsibility for the cost of private school tuition but also the authority to decide in the first instance

---

[2] The parties put on no evidence of either party's financial ability or inability to afford private school tuition. However, Jennifer testified that Kenneth "said that he could not afford Magnolia Heights either."

11

which school the children should attend.

¶24. Jennifer's argument fails because section 17 does not grant the chancellor such broad authority to direct the children's schooling. By its terms, section 17 authorizes the chancellor to "reevaluate" only the "matter" that section 17 addresses, which is the parties' respective responsibilities for the cost of private school tuition, child care, and extracurricular activities. It does not give the chancellor authority to second-guess or override Kenneth's decision regarding which school the children should attend. The parent who has legal custody of a child—or, in this case, "final decision making authority" under the divorce decree—has the final decision as to which school the child should attend. *See* Miss. Code Ann. § 93-5-24(5)(d) ("'[L]egal custody' means the decision-making rights, the responsibilities and the authority relating to the health, education and welfare of a child."). The parties' Agreement, which the court adopted as part of the final divorce decree, grants Kenneth "final decision making authority" with respect to all "major life decisions affecting the . . . children." Therefore, regardless of what the chancellor or this Court may think of the wisdom of Kenneth's school choice, that decision belonged to Kenneth and should not have been second-guessed or overridden by a judge.

¶25. Recognition of Kenneth's right to decide where his children attend school does not "usurp" the chancellor's authority, as the majority opinion indicates. *Ante* at ¶17. It simply recognizes that under the parties' Agreement and divorce decree, this decision belongs to Kenneth, not the chancellor. A chancellor may modify legal custody—and grant decision-making authority to the other parent—if there is proof of a material change in circumstances

12

that adversely affects the child. However, Jennifer did not allege a material change in circumstances or petition to modify custody, and a chancellor has no independent authority to second-guess or override a parent's decision as to where a child should attend school. *See Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35, 545 (1925) (recognizing that the Due Process Clause protects "the liberty of parents . . . to direct the upbringing and education of children under their control").

¶26. The majority opinion also suggests that the chancellor had the authority to decide where the children would attend school because the final section of the parties' Agreement (section 27) recognized that the Agreement would be "submitted to the Court . . . for approval or disapproval."[3] *Ante* at ¶¶3, 11, 14. However, this provision simply recognized that the chancellor would have to approve the Agreement before it could be incorporated as part of a final decree for divorce. *See Reno v. Reno*, 253 Miss. 465, 474, 176 So. 2d 58, 62 (1965) ("Any agreement between the parties affecting the custody and future support of the child must have the approval of the court."). As stated above, the parties did submit the Agreement to the chancellor for approval, and the chancellor "ratified, approved, and adopted" the Agreement and made it part of the parties' final divorce decree. Once the chancellor approved and adopted the parties' Agreement, this language in section 27 had served its purpose and had no continuing effect. Section 27 did not give the chancellor continuing authority to strike or rewrite provisions of the Agreement years after the

---

[3] The relevant sentence states in full: "It is further agreed and understood by and between the parties that this is a full and complete contract and same may be submitted to the Court of proper venue and jurisdiction for approval or disapproval by decree or otherwise."

chancellor had approved and adopted the Agreement as part of the divorce decree.

¶27.    In addition, this is not a case in which a provision of a court-approved agreement is later deemed "void and contrary to public policy." *McManus v. Howard*, 569 So. 2d 1213, 1216 (Miss. 1990) (holding that an agreement that "called for change in custody, without further court action or approval, upon the happening of certain events" was "void and contrary to public policy"). If a provision of the parties' custody agreement is void and contrary to public policy, then it cannot be enforced even if the chancellor (erroneously) approved the agreement on a prior occasion. *Id.* at 1215-16. However, no provision of the Agreement between Kenneth and Jennifer is void or contrary to public policy. The Agreement simply provides that Kenneth shall have "final decision making authority" if the parties cannot agree on important decisions involving their children. As stated above, such provisions are valid and do not violate any public policy.

¶28.    If Kenneth ever exercises his "final decision making authority" in a manner that results in a material change in circumstances that adversely affects the children, then Jennifer may petition the chancery court for a modification of legal custody. In the present case, however, Jennifer has not petitioned to modify custody or alleged any material change in circumstances. Rather, Jennifer simply disagreed with Kenneth's school choice and then persuaded the chancellor that it was in the children's best interest to attend school in Hernando rather than Lake Cormorant.[4] But a mere finding that a child would be better

---

[4] The chancellor stated, "Quite honestly, both of you have some very valid points about each of your choices about the schools; however, the Court just feels like it's going to be in the children's best interest to go to school where they live, to go to school in Hernando." The chancellor agreed with Kenneth that "it would be beneficial to have the

served at another school is not a valid basis for overriding the school choice of a parent who has the legal authority to make that choice. Accordingly, I would reverse the chancellor's decision ordering the children to attend school in Hernando, and I respectfully dissent.

**BARNES, C.J., JOINS THIS OPINION IN PART.**

---

children in the same school with their stepmom" and that "[a]ll the DeSoto County Schools," including Lake Cormorant, "are pretty good." But the chancellor concluded that it was "more important for the children not to have [a] 30-minute commute [to and from school] and to be in school in the town where they live."