## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00318-COA

**MARKEETA OUTLAW**                                             **APPELLANT**

**v.**

**LINDA O'CALLAGHAN, BOTH**                               **APPELLEE**
**INDIVIDUALLY AND D/B/A KENMARE**
**GROUP, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/26/2018 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES RAY MOZINGO HORACE HUNTER TWIFORD IV |
| ATTORNEY FOR APPELLEE: | JAY HOWARD HURDLE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/13/2020 |
| MOTION FOR REHEARING FILED: | 11/19/2020 - DENIED; AFFIRMED - 03/30/2021 |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

## MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing is denied. The original opinion of this Court is withdrawn, and this modified opinion is substituted in its place.

¶2.     After Markeeta Outlaw purchased the property that is the subject of this appeal (subject property) through a tax sale, she filed suit to quiet and confirm title in the Oktibbeha County Chancery Court.  The chancery court granted her a default judgment.  The prior landowner Linda O'Callaghan, both individually and d/b/a Kenmare Group LLC

(O'Callaghan), filed an action to set aside the judgment with the court's leave.

¶3.    In its final judgment, the chancery court found that deficiencies in the Oktibbeha County Chancery Clerk's statutorily required notice to O'Callaghan rendered the tax sale void. Outlaw appeals from the court's judgment, and finding one basis on which to affirm the court's judgment, we do so.

## FACTS AND PROCEDURAL HISTORY

¶4.    In 2009, O'Callaghan and her husband, Michael, purchased two residences in Oktibbeha County to be used as rental properties. The legal description for the subject property is as follows:

> Part of Lot 39 of Dogwood Golf Club Phase One, a subdivision on file in the office of the Chancery Clerk for Oktibbeha County, Mississippi, and being further described as follows:
>
> Commencing at the recovered iron pin marking the southeast comer of Lot 1 of said subdivision; run thence, East for 1444.15 feet; run thence, South for 141.17 feet to the set iron pin marking the Northeast corner of Lot 39-B and the POINT OF BEGINNING; run thence, South 10 degrees 36 minutes West for 50.00 feet to a set iron pin; run thence, along a curve to the left with an arc length of 48.20 feet, a radius of 670.00 feet, with a chord bearing North 81 degrees 27 minutes West for 48.19 feet to a set iron pin; run thence, North 06 degrees 29 minutes East for 50.00 feet to a set iron pin; run thence, along a curve to the right with an arc length of 51.80 feet, a radius of 720.00 feet with a chord bearing South 81 degrees 27 minutes East for 51.79 feet back to the iron pin marking the POINT OF BEGINNING.
>
> Being 0.06 acres, more or less, and being 2500 square feet, more or less.

Both properties were titled in the name of Kenmare Group LLC (Kenmare), which was purportedly a Mississippi limited liability company with a listed mailing address of 609

2

Inverness Drive, La Canada, California 91011 (O'Callaghan's home address). However, Kenmare was never registered with the Mississippi Secretary of State's office. The properties were managed by a local property management group, and Michael, an attorney, handled all of the property issues.

¶5.    Sadly, Michael died from lung cancer on August 12, 2013. O'Callaghan also suffered from serious medical issues due to treatment for a brain tumor, including partial paralysis and weakness. In June 2014, O'Callaghan sold the couple's residence at 609 Inverness Drive, La Canada, California, and moved to a smaller home at 4817 Viro Road, La Canada Flintridge, California 91011. O'Callaghan had received and paid the properties' ad valorem personal property taxes, mistakenly thinking that she was paying the property taxes; but in fact, the property taxes had not been paid since 2011. She continued to receive rental income from the properties.[1]

¶6.    On August 27, 2012, Outlaw purchased the subject property at a tax sale for the 2011 unpaid taxes. On May 24, 2014, the chancery clerk sent a notice of forfeiture by certified mail to Kenmare at the 609 Inverness address, which stated that the owner had the right of redemption until August 27, 2014.[2] The clerk's office received the certified mail return

_____

[1] O'Callaghan testified that she received approximately $20,000 annually in rental income, which is evidenced by a Mississippi non-resident income tax return that she filed in 2015.

[2] Mississippi Code Annotated section 27-43-3 (Rev. 2017) provides that a landowner whose land was sold for unpaid taxes may redeem the property within two years of the date of the tax sale. The chancery clerk is required "to notify the landowner of its right of redemption prior to the expiration of the redemption period." *Panola Cnty. Tax Assessor*

3

receipt, which listed the date of delivery as May 29, 2014. The receipt contained an illegible signature, which the clerk's office flagged as "unable to read." The chancery clerk recorded the conveyance of land sold for taxes on November 4, 2014, in the county's land records, issuing Outlaw a tax deed. Outlaw subsequently filed suit to quiet and confirm title for the subject property, and the chancery court granted her a default judgment in October 2016. It was at this time that O'Callaghan claims she first received notice of the tax sale through her property management company.[3] On October 12, 2017, O'Callaghan filed an action to set aside the default judgment.[4] A trial was held on November 5, 2018.

¶7. On December 26, 2018, the chancery court filed its "Final Judgment Setting Aside Tax Deed and Quieting and Confirming Title" in favor of O'Callaghan. The court found the following deficiencies in the statutorily required notice: (1) the property's description in the notice "incorrectly nam[ed] the platted subdivision" and failed "to include the date on which the deed was recorded"; (2) the clerk's seal and signature was not included in the notice; and (3) the return receipt was "only partially completed," failing to identify the location where the notice was delivered or the addressee and containing an signature that the

---

v. Oak Inv. Co., 297 So. 3d 1122, 1130 (¶35) (Miss. Ct. App. 2020) (citing Miss. Code Ann. §§ 27-43-1 to 27-43-11 (Rev. 2010)).

[3] Outlaw testified that she was using the same property management company as O'Callaghan.

[4] O'Callaghan initially filed a motion to set aside the judgment, but the chancery court ruled she needed to file a separate action and granted her leave to do so. Because O'Callaghan discovered that Kenmare was never properly registered in Mississippi, she filed the action both individually and as the surviving partner of Kenmare.

clerk "was 'unable to read.'" Because of these deficiencies, the court ruled that the tax sale was void and confirmed title in O'Callaghan.[5] *See* Miss. Code Ann. § 27-43-3 (providing that "[s]hould the clerk inadvertently fail to send notice as prescribed in this section, then the sale shall be void"). Outlaw appeals from the court's judgment.

## STANDARD OF REVIEW

¶8.     Our appellate courts employ a limited standard of review on appeal from a chancery court's decision, reversing only if the court "abused [its] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *McNatt v. Turbeville*, 162 So. 3d 881, 883 (¶9) (Miss. Ct. App. 2015) (citation omitted). "We review questions of law de novo." *Id*.

## DISCUSSION

¶9.     Outlaw raises several arguments in her brief, all concerning one issue: whether the chancery court erred in finding that the tax sale was void due to the clerk's failure to comply with the statutory requirements of Mississippi Code Annotated sections 27-43-1 and 27-43-3. Section 27-43-1 provides:

> The clerk of the chancery court shall, within one hundred eighty (180) days and not less than sixty (60) days prior to the expiration of the time of redemption with respect to land sold, either to individuals or to the state, be required to issue notice to the record owner of the land sold as of one hundred eighty (180) days prior to the expiration of the time of redemption, in effect following, to wit:

---

[5] The court further ordered O'Callaghan to reimburse Outlaw "for the taxes paid at the tax sale, plus statutory interest."

"State of Mississippi,

To _____,

County of _____

You will take notice that _____ (here describe lands) _____ lands assessed to you or supposed to be owned by you, was, on the ___ day of _____ sold to _____ for the taxes of _____ year _____, and that the title to said land will become absolute in _____ unless redemption from said tax sale be made on or before ___ day of _____.

This ___ day of _____ 20___

_____ Clerk."

Section 27-43-3 provides in pertinent part:

*The clerk shall issue the notice to the sheriff of the county of the reputed owner's residence, if he be a resident of the State of Mississippi . . . . The clerk shall also mail a copy of same to the reputed owner at his usual street address, if it can be ascertained after diligent search and inquiry, or to his post-office address if only that can be ascertained, and he shall note such action on the tax sales record.* The clerk shall also be required to publish the name and address of the reputed owner of the property and the legal description of such property in a public newspaper of the county in which the land is located, or if no newspaper is published as such, then in a newspaper having a general circulation in such county. Such publication shall be made at least forty-five (45) days prior to the expiration of the redemption period.

*If the reputed owner is a nonresident of the State of Mississippi, then the clerk shall mail a copy of the notice to the reputed owner in the same manner as set out in this section for notice to a resident of the State of Mississippi, except that notice served by the sheriff shall not be required.*

*Notice by mail shall be by registered or certified mail. In the event the notice by mail is returned undelivered . . . , then the clerk shall make further search and inquiry to ascertain the reputed owner's street and post-office address. If the reputed owner's street or post-office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as set out in this section. If notice is again issued and it is again returned not found and if*

6

notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify in the affidavit the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post-office address and the affidavit shall be retained as a permanent record in the office of the clerk and that action shall be noted on the tax sales record. If the clerk is still unable to ascertain the reputed owner's street or post-office address after making search and inquiry for the second time, then it shall not be necessary to issue any additional notice but the clerk shall file an affidavit specifying the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post-office address and the affidavit shall be retained as a permanent record in the office of the clerk and that action shall be noted on the tax sale record.

*. . . The failure of the landowner to actually receive the notice herein required shall not render the title void, provided the clerk and sheriff have complied with the duties prescribed for them in this section.*

Should the clerk inadvertently fail to send notice as prescribed in this section, then the sale shall be void and the clerk shall not be liable to the purchaser or owner upon refund of all purchase money paid.

(Emphasis added). We will address in turn each of the deficiencies the chancery court found and Outlaw's assignments of error.

## A.     Property Description

¶10.    The notice of forfeiture sent by the clerk listed the following property description:

LOT 39-B DOGWOOD GOLF CLUF CLUB RESIDENTIAL PHASE I
MAP 159P DB/PG 2009/73
DEED BOOK 2009 PAGE 73 12/31/2008
S/T/R 32 -19N-15E BLOCK
PARCEL: l59P-00-024.0l

The court concluded that "the description of property provided by the clerk's notice was insufficient[,] . . . incorrectly naming the platted subdivision or providing a legal description of the property." Specifically, the court noted that the legal name of the platted subdivision

7

was "Dogwood Golf Club & Residential *Community* Phase One." (Emphasis added). The court also found that the notice "failed to include the date the deed was recorded, January 9, 2009."

¶11. Finding the property description was "a mandatory part of the notice," rendering the error "fatal," the court noted two cases dealing with lienor notices that provided emphasis to "the importance of the accuracy and specificity of the property description in a tax sale notice." Outlaw challenges the chancery court's reliance on these two cases—*Wachovia Bank N.A. v. Rebuild America*, 56 So. 3d 586 (Miss. Ct. App. 2011), and *Green Tree Servicing LLC v. Dukes*, 25 So. 3d 399 (Miss. Ct. App. 2009). Specifically, she contends that "the chancellor ignored the plain language of [section] 27-43-1 and erroneously imposed the description requirements of [s]ection 27-43-5[,] which governs notice to *lienors*, not landowners." Although Outlaw acknowledges that there was a "simple typo" in the description, she claims the notice was "sufficient to put any reasonable person on notice that they needed to redeem their unpaid taxes on Lot 39-B Dogwood Golf Club Residential Phase One."

¶12. We find merit to Outlaw's argument. Section 27-43-1, which governs the form of statutory notice to the record landowner, merely provides that the clerk "here describe lands" to be forfeited; section 27-43-5 requires the same. The only difference is that the section 27-43-5 notice must also contain the book, page, and date of the instrument recording the lien filed with the clerk's office. The two cases emphasized by the chancery court both held that

8

notice was deficient due to the failure to include the book, page, and date of the recorded deed instrument; neither case addressed any issue with the property description. *See Wachovia Bank N.A.*, 56 So. 3d at 587 (¶7); *Green Tree Servicing*, 25 So. 3d at 403-04 (¶13). Accordingly, we agree with Outlaw's reasoning that these cases are "inapplicable" to this issue, and the chancery court cited no relevant authority to support its finding that the property's legal description must be fully included in the notice of forfeiture.

¶13.    O'Callaghan and her husband traveled to Mississippi, bought the subject property, and paid taxes on it for a couple of years before it was sold for unpaid taxes. We find the property description in the notice—containing the lot number, parcel number, block number, deed book and page number, date of the warranty deed, and all but one word of the subdivision name—was sufficient to inform her of the specific property at issue.

**B.    Clerk's Seal and Signature**

¶14.    Another deficiency in the notice, as determined by the chancery court, was the lack of a signature by the chancery clerk or her deputy and the clerk's seal. The top of the notice indicated a return address for the Oktibbeha County Chancery Clerk's office, and at the end of the notice, it stated the following:

> Witness by my hand and seal of office, this the 23rd of May, 2014.

_____
MONICA W. BANKS
CHANCERY CLERK

By:                                    D.C.

9

However, the notice contained in the record does not have either the chancery clerk's or deputy clerk's signature, nor the chancery clerk's seal.[6]

¶15. Although section 27-43-1 does not expressly provide that the notice must contain the clerk's seal, the form of notice does have a blank line for the clerk's signature. We find unpersuasive Outlaw's contention that the blank line "is meant to be filled in with the appropriate county and court designation, i.e., 'Oktibbeha County Chancery Clerk'"; the line is obviously meant for the signature of the chancery clerk, either by herself personally or by her deputy clerk.

¶16. Moreover, in *Orcutt v. Chambliss*, 243 So. 3d 757, 761 (¶13) (Miss. Ct. App. 2018), this Court observed that a notice of forfeiture did not contain the chancery clerk's signature, "as required." Outlaw argues that this language is dicta and not controlling. We do not agree with this reasoning; nor do we find that the omission of a signature to be a mere clerical error. As the chancery court noted, without the clerk's signature, the notice "provides [no] obvious clue that it is an official document."[7]

¶17. "[P]recedent requires the notice statutes to be *strictly construed* in favor of the

---

[6] Outlaw notes that "[t]here is no indication in the record or testimony from the clerk or any of her deputies as to whether the original of the [n]otice which was actually mailed to Kenmare contained a signature or seal." Outlaw could have taken the deposition of the chancery clerk or another person in the clerk's office with knowledge of the process. However, she failed to do so, and the chancellor was within his discretion to consider the unsigned notice as contained in Exhibit 2 "Clerk's Tax File" at face value.

[7] By analogy, this Court has held that an affidavit that is not notarized is "merely a piece of paper with the word 'affidavit' as its title." *Thomas v. Greenwood Leflore Hosp.*, 970 So. 2d 273, 277 (¶19) (Miss. Ct. App. 2007).

landowners, and *any* deviation from the statutorily mandated procedure renders the sale void." *Panola Cnty. Tax Assessor*, 297 So. 3d at 1131 (¶40) (emphasis added) (internal quotation marks omitted) (quoting *Cleveland v. Deutche Bank Nat. Tr. Co.*, 207 So. 3d 710, 715 (¶20) (Miss. Ct. App. 2016)). Construing the statute in favor of O'Callaghan, we affirm the court's finding that the lack of the clerk's signature rendered the notice fatally flawed.

### C.    Deficiencies in the Return Receipt

¶18.    Section 27-43-3 requires that "[n]otice by mail shall be by registered or certified mail[; i]n the event the notice by mail is returned undelivered[,] . . . the clerk shall make further search and inquiry to ascertain the reputed owner's street and post-office address." Although the notice in this case was not returned "undelivered," the chancery court determined that the following deficiencies and omissions in the return receipt raised "significant doubt" as to whether the notice was delivered to O'Callaghan: (1) the illegible signature that the clerk's office was "unable to read"; (2) the failure in identifying "the actual location [to which] the package was delivered"; and (3) the failure to note "whether the addressee, the addressee's agent or someone else signed for the mail." Taking these findings into account, the court held that "[t]he proof presented as to whether or not the notice was undelivered [was] insufficient and the conclusion must be drawn in favor of the landowner."

¶19.    We disagree. The statute does not require the landowner to receive notice. The statute only requires that the clerk follow the statute and make further inquiry should the

11

notice be returned "undelivered." We find the omissions and deficiencies in the return receipt did not render the notice insufficient under the statute. The clerk followed the requirements of section 27-43-3 by sending the notice by certified mail, and although the return receipt had an illegible signature, it was delivered to someone at that address. Further, because the notice was sent to Kenmare, not O'Callaghan individually, we cannot find that the illegible signature gave any warning to the clerk that the notice may have been undelivered.[8] Because the clerk strictly complied with her duties under the statute, we conclude that the court's determination in this regard was manifest error.

### D. Notice by Publication

¶20. The chancery court did not address whether O'Callaghan received notice by publication in its December 2018 judgment. However, Outlaw comments in her brief that O'Callaghan waived any right to claim that she failed to receive the required notice by publication because it "was never raised or considered at the trial level." O'Callaghan replies that she raised a general claim in her complaint that "all statutorily-required steps in the tax sale and deed issuance were not followed," and "nothing presented by Outlaw or appearing as part of the record in this case demonstrated that the clerk tried to comply with the statutory publication requirement."

---

[8] O'Callaghan challenged the tax sale only as to the clerk's failure to comply with the statutory requirements. She did not argue that the statute itself failed to protect her due process right to "adequate notice of the impending taking." *See Jones v. Flowers*, 547 U.S. 220, 234 (2006).

¶21. The record reflects that the chancery court noted in the October 6, 2016 default judgment, which afforded Outlaw title to the property, that notice by publication had been served in the *Starkville Daily News* "on November 10, November 17, [and] November 24, 2015" and that proof of that publication was "on file in this cause." Because the court's ruling in the 2016 judgment has not been addressed or challenged on appeal, we decline to address the merits of this issue.

## CONCLUSION

¶22. We find the court erred in holding the property description and delivery of the notice was insufficient. Because the notice failed to contain the clerk's signature as required by section 27-43-1, however, we find no error in the court's ruling that "the statutes and procedure concerning the notice of the tax sale to the landowner were not strictly followed, and the sale must be set aside as void." The court's judgment setting aside the tax sale and confirming title in O'Callaghan is affirmed.

¶23. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. SMITH AND EMFINGER, JJ., NOT PARTICIPATING.**

13